704 A.2d 81

TOWNSHIP OF SADDLE BROOK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. A.B. FAMILY CENTER, INC., RHODESTAR REALTY COMPANY AND STUART RHODES, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 16, 1997—Decided January 2, 1998.

Before Judges LONG, STERN and KIMMELMAN.

*Brian M. Chewcaskie,* argued the cause for appellant (*Gittleman, Muhlstock, Chewcaskie & Kim,* attorneys; *Mr. Chewcaskie,* on the briefs).

*Dennis J. Oury,* argued the cause for respondents (*Oury & Mizdol,* attorneys; *Mr. Oury,* on the brief).

*Bertram P. Goltz, Jr.*, Deputy Attorney General, argued on behalf of intervenor State of New Jersey (*Peter Verniero*, Attorney General, attorney; *Joseph L. Yannotti*, Assistant Attorney General, of counsel; *Mr. Goltz*, on the briefs).

The opinion of the court was delivered by

STERN, J.A.D.

The Township of Saddle Brook ("Township") appeals from a judgment (1) declaring its Peace and Good Order Ordinance "per se unconstitutional because it is a content-based regulation of speech"; (2) declaring *N.J.S.A.* 2C:34–7 "unconstitutional as applied by Saddle Brook based upon the fact that [its] application ... does not provide a reasonable alternative means of communication;" and (3) issuing "a Certificate of Occupancy for the operation" of defendant A.B. Family Center's store. Plaintiff Township had sought "an order restraining the defendant A.B. Family Center from operating a store specializing in adult video and related merchandise" because it was operating in violation of (1) several provisions of the Township's zoning ordinances, (2) the Township's Peace and Good Order Ordinance, and (3) *N.J.S.A.* 2C:34–7.

Following an evidentiary hearing, the trial judge found "that the town has engaged in selective enforcement of its ordinances" regarding "site plan approval, a certificate of occupancy, sufficient parking spaces, and the failure to obtain proper sign permits," and could not enforce those provisions. He further concluded that the Township's Peace and Good Order Ordinance "plainly violates the First Amendment of the United States Constitution" because it implements a content-based ban of all adult establishments within the city limits. The trial judge also held that *N.J.S.A.* 2C:34–7, as applied, violates the First Amendment because it "unreasonably limit[s] the defendant's avenues of communication on the grounds that there is no area within the town that does not fall within *N.J.S.A.* 2C:34–[7]'s 1,000 foot barrier." With regard to *N.J.S.A.* 2C:34–7, the judge stated:

The town's Construction and Zoning Officer testified that there is no area within the borough that is beyond the statute's 1,000–foot buffer. The town did not argue that a comparable area in a neighboring borough permits an adult-oriented business. Furthermore, the town did not address why other businesses are permitted to sell adult-oriented merchandise in the borough. Accordingly, this court must hold that provision of the statute unconstitutional as against Saddle Brook on the grounds that the statute does not provide a reasonable alternative means of communication.

The Township has appealed from the resulting judgment, and we granted the State's motion to intervene on the issue related to the constitutionality of *N.J.S.A.* 2C:34–7. We now reverse the holding that *N.J.S.A.* 2C:34–7 is unconstitutional as applied and remand for further proceedings in light of our conclusion that *N.J.S.A.* 2C:34–7 renders municipal boundaries irrelevant where the buffer cannot be satisfied within a particular municipality and that the statute avoids the constitutional infirmity of not providing alternative means of communication within a single municipality.

I.

There is no dispute that the premises involved consist of a two-story, 10,000 square foot building facing Route 46 in Saddle Brook. The retail selling space consists of 500 square feet on the first floor. Certificates of occupancy for retail establishments were issued by the Township to former tenants of the premises. The premises are within 1,000 feet of several residential areas, a playground and the Franklin School. The Township's zoning officer and construction code official ("zoning officer" or "officer"), who testified at the hearing, could identify no location within the Township where an adult video store could operate in excess of 1,000 feet of a school, church, bus stop or residential area.

In April 1995, a certificate of occupancy was issued to Route 46 Video Inc. to operate a "Retail Video Store." Shortly thereafter a revised certificate of occupancy was issued authorizing the "[s]ales and rentals of Video Tapes, Adult Videos, Video Viewing Equipment, Periodicals, Newspapers, Apparel and novelty items."

On May 16, 1995, the owner of Route 46 Video submitted a sketch of a proposed sign, which indicated that the business would offer "triple X rated adult books, magazines, ... C.D. Roms, lingerie and leather." The zoning officer then advised its owner that "he could not conduct such a business on the premises." The next day the zoning officer, believing that the property owner he had known and trusted had misrepresented the truth, revoked the certificate of occupancy and the sign permits previously issued to Route 46 Video. On June 12, 1995, the zoning officer also sent letters to Route 46 Video and the landlord advising that the certificate of occupancy "was issued in error" and that they were in violation of ordinance provisions relating to site plan approval, parking and signage for which Planning Board or Board of Adjustment approval was required.

Shortly after the certificate of occupancy was revoked, the Township officials painted a sidewalk and created a "no parking" area around the building. According to the property owner, the mayor made various threats to the effect that if the store did not close the owner would "lose [his] building" and that "[the mayor] would see that aggressive law enforcement was done." Route 46 Video endeavored to obtain accelerated judicial relief, but was unsuccessful.

On September 7, 1995, A.B. Family Center, Inc. ("defendant") submitted an application for a certificate of occupancy for the same premises. The application described the proposed use as "retail video variety store for sale and rental of videos, accessories and related items." The application was denied because:

1. Site plan approval pursuant to section 163, the site plan ordinance, is required.
2. Parking requirements must be shown to conform with section 206–36 of the zoning ordinance.
3. Existing signs are non-conforming and pursuant to section 206–73A of the zoning ordinance they cannot be used.

An appeal to the Board of Adjustment was unsuccessful, but defendant opened its business relying on a 1986 certificate of occupancy. A cease and desist order was issued by the zoning officer on December 29, 1995. When defendant operated its

business in violation of the cease and desist order, the Township filed municipal court complaints and commenced this action seeking to enforce its ordinances.

According to the zoning officer's testimony, the site plan was required because approximately eight parking spaces had been eliminated when the sidewalk was created. He admitted, however, that prior to the painting of the parking spaces, the building "did not comply with the parking requirements of the zoning ordinance" but that certificates of occupancy had been issued to prior tenants. The officer also admitted that "[f]rom a parking standpoint," "there's no difference between a video store, clothing store or a [retail] tool store." He also testified that certificates of occupancy were issued to numerous other businesses in the Township which did not comply with the parking ordinance. The zoning officer concluded that the sign ordinance was also violated because defendant had no certificate of occupancy to operate a business and had no sign permit, but admitted that he did not always require the removal of signs which had been erected or installed without a permit.

## II.

As noted, the Township denied defendant's application for a certificate of occupancy based on purported violations of ordinance provisions relating to site plan approval, parking requirements and signs, and the trial court found that these provisions were selectively enforced. The Peace and Good Order ordinance was not yet adopted at the time the application was denied.

The fact that other entities have obtained approval of similar licenses or permits in similar circumstances does not by itself support a finding of selective enforcement. *Butler Oak Tavern v. Division of Alcoholic Beverage Control,* 20 *N.J.* 373, 382, 120 *A.*2d 24 (1956). "The mere fact that a law has not been fully enforced against others does not give a defendant the right to violate it." *State v. Boncelet,* 107 *N.J.Super.* 444, 453, 258 *A.*2d 894 (App.Div.1969). The party asserting selective enforcement

has a "heavy" burden of proof. *State v. DiFrisco*, 118 *N.J.* 253, 266, 571 *A.*2d 914 (1990).

■ We are nonetheless satisfied that the record justifies the trial judge's conclusion that the municipality endeavored to selectively enforce site plan, parking and sign requirements in order to prevent the operation of an adult video and bookstore. Stated otherwise, the record supports the view that the technical violations of the ordinance provisions were of no concern to the municipality but for defendant's desire to sell adult books, videos and related goods. We, therefore, find no basis to disturb the trial judge's decision to deny injunctive relief on the basis of zoning ordinance violations.[1]

### III.

The Township argues that its Peace and Good Order ordinance should be presumed to be constitutional and control the disposition of the matter before us even though it was not adopted until January 4, 1996.[2] The ordinance was found to be facially unconstitutional because of the total ban of adult bookstores and video stores throughout the municipality. Section one of the ordinance provides:

> Within all districts throughout the Township of Saddle Brook, the following activities, businesses and enterprises are hereby prohibited: rehabilitation centers, drug clinics, drug distribution centers, halfway houses, X-rated movie theaters, peep shows, adult bookstores and/or adult video stores, exhibits and massage parlors.

---

[1] We do not pass on any question relating to whether the Law Division's holding precludes prosecution of the ordinance violations. Here we deal with a complaint seeking injunctive relief. We further note that no issue of preemption is raised as a result of the perimeter buffer and sign requirements of *N.J.S.A.* 2C:34–7b and c.

[2] The Township claims that "the definitions utilized in the Ordinance § 147–3 [which defines "adult bookstore and/or adult video stores," "obscene material," "adult entertainment use," "exhibit" and "commercial establishment"] are identical to those contained in *N.J.S.A.* 2C:34–2 and *N.J.S.A.* 2C:34–6."

Of course, a statute aimed directly at the suppression of sexually explicit material is content-based and is presumed to be violative of the First Amendment. *City of Renton v. Playtime Theatres, Inc.*, 475 *U.S.* 41, 46–47, 106 *S.Ct.* 925, 928, 89 *L.Ed.*2d 29, 37 (1986); *Schad v. Borough of Mt. Ephraim*, 452 *U.S.* 61, 65–66, 101 *S.Ct.* 2176, 2181, 68 *L.Ed.*2d 671, 678–79 (1981); *Chez Sez VIII, Inc. v. Poritz*, 297 *N.J.Super.* 331, 342, 688 *A.*2d 119 (App. Div.), *certif. denied*, 149 *N.J.* 409, 694 *A.*2d 194 (1997), *cert. denied*, —— *U.S.* ——, 118 *S.Ct.* 337, 139 *L.Ed.*2d 262 (1997). To survive judicial scrutiny, a content-based regulation must be necessary to serve a compelling state interest and be narrowly drawn to achieve that end, *Chez Sez VIII, supra*, 297 *N.J.Super.* at 342–43, 688 *A.*2d 119. Here, the Township made no showing that the complete ban on adult bookstores and adult video stores served any compelling interest or that the Township selected the least restrictive means for accomplishing that end. *See also Schad, supra*, 452 *U.S.* at 68–69, 101 *S.Ct.* at 2182, 68 *L.Ed.*2d at 680–81; *Young v. American Mini Theatres, Inc.*, 427 *U.S.* 50, 71–72, 96 *S.Ct.* 2440, 2451–52, 49 *L.Ed.*2d 310, 326–27 (1976); *Bell v. Stafford Tp.*, 110 *N.J.* 384, 395–98, 541 *A.*2d 692 (1988). Moreover, even if the ordinance is merely designed to prevent the secondary effects of sexually oriented businesses, it embodies a total prohibition throughout the Township, including the commercial zone it created. *But see City of Renton, supra; Schad, supra; Ben Rich Trading Inc. v. City of Vineland*, 126 *F.*3d 155, 161, 164 (3d Cir.1997).

But we need not explore the question of the ordinance's constitutionality at length. The parties agreed at argument before us that any holding relating to enforcement of the ordinance by the Township could not prevent enforcement of *N.J.S.A.* 2C:34–7 by the prosecutor or Attorney General, and that statute appears to preempt the municipal Peace and Good Order ordinance to the extent it is inconsistent with respect to the operation of this type of business. *See N.J.S.A.* 2C:1–5d; *see also State v. Meyer*, 212 *N.J.Super.* 1, 4, 512 *A.*2d 1139 (App.Div.1986). On its face the total prohibition of "adult bookstores and/or adult video stores" is

admittedly broader than the area proscribed by *N.J.S.A.* 2C:34–7, as the ordinance proscribes what might otherwise fall outside the buffer zone created by the statute.[3] Moreover, as the Attorney General develops in his brief, the statute appears to have been designed, at least in part, to prevent the type of constitutional attack here launched against a total prohibition of adult video and bookstores.

## IV.

*N.J.S.A.* 2C:34–7 provides in relevant part:

a. Except as provided in a municipal zoning ordinance adopted pursuant to *N.J.S.* 2C:34–2, no person shall operate a sexually oriented business within 1,000 feet of any existing sexually oriented business, or any church, synagogue, temple or other place of public worship, or any elementary or secondary school or any school bus stop, or any municipal or county playground or place of public resort and recreation, or within 1,000 feet of any area zoned for residential use. This subsection shall not apply to a sexually oriented business already lawfully operating on the effective date of this act where another sexually oriented business, an elementary or secondary school or school bus stop, or any municipal or county playground or place of public resort and recreation is subsequently established within 1,000 feet, or a residential district or residential lot is subsequently established within 1,000 feet.[4]

*N.J.S.A.* 2C:34–6 defines a "Sexually oriented business" as:

(1) A commercial establishment which as one of its principal business purposes offers for sale, rental, or display any of the following:

Books, magazines, periodicals or other printed material, or photographs, films, motion pictures, video cassettes, slides or other visual representations which depict or describe a "specified sexual activity" or "specified anatomical area"; or still or motion picture machines, projectors or other image-producing devices which show images to one person per machine at any one time, and where the images so

---

[3] We need not decide the constitutionality of such a buffer zone in a municipality that can accommodate it. We note that the Legislature has expressly permitted municipalities to adopt ordinances embodying "additional requirements or standards" regarding the 50 foot perimeter buffers of *N.J.S.A.* 2C:34–7b, but has not adopted a parallel provision for *N.J.S.A.* 2C:34–7a. *See also N.J.S.A.* 2C:34–2b authorizing zoning ordinances permitting sale and distribution of "obscene material."

[4] Other provisions of the statute deal with perimeter buffers and sign requirements for such businesses. *N.J.S.A.* 2C:34–7b and c.

displayed are characterized by the depiction of a "specified sexual activity" or "specified anatomical area"; or instruments, devices, or paraphernalia which are designed for use in connection with a "specified sexual activity" . . . .

The trial judge found that the provisions of *N.J.S.A.* 2C:34–7 "unreasonably limit the defendant's avenues of communication on the grounds that there is no area within the town that does not fall within [*N.J.S.A.* 2C:34–7's] 1,000 foot barrier." Thus, the judge concluded that "this court must hold that provision of the statute unconstitutional as against Saddle Brook on the grounds that the statute does not provide a reasonable alternative means of communication."

The Township now argues that the trial judge erred in finding that no reasonable alternative channels of communication exist because he did not consider the fact that locations for defendant's business exist outside the Borough of Saddle Brook in neighboring communities.[5] The State, as intervenor, also argues that locations which lay outside the Township's boundaries can satisfy the constitutional requirement that the restriction on speech leave open alternate channels of communication. In particular, the State contends that "*N.J.S.A.* 2C:34–7, by virtue of being a statute enacted by the Legislature rather than merely an ordinance adopted by a municipality, is not constrained by municipal boundaries, meaning that the thousand-foot 'buffer-zone' specified by the provision need not be restricted solely to a particular municipality." We agree and reverse.

Government has a legitimate right to restrict or limit, at least to some degree, the sale of adult-oriented materials.[6] As

---

[5] In his opinion the trial judge noted that this argument was not made at trial by the Township.

[6] As noted, the trial judge's holding that *N.J.S.A.* 2C:34–7 is unconstitutional was based on the fact "there is no area within the town that does not fall within *N.J.S.A.* 2C:34–[7]'s 1,000 foot barrier." The holding, therefore, found the statute unconstitutional "as applied." There is no claim that the 1,000 foot barrier was excessive to achieve the legitimate government interest of regulating the location of an adult bookstore, video store or related business. *Renton,*

Justice Stevens, writing for the plurality in *Young v. American Mini Theatres, Inc., supra*, stated:

> [E]ven though we recognize that the First Amendment will not tolerate the total suppression of erotic materials that have some arguably artistic value, *it is manifest that society's interest in protecting this type of expression is of a wholly different, and lesser, magnitude* than the interest in untrammeled political debate that inspired Voltaire's immortal comment. Whether political oratory or philosophical discussion moves us to applaud or to despise what is said, every schoolchild can understand why our duty to defend the right to speak remains the same. But few of us would march our sons and daughters off to war to preserve the citizens' right to see "Specified Sexual Activities" exhibited in the theaters of our choice. Even though the First Amendment protects communication in this area from total suppression, we hold that the State may legitimately use the content of these materials as the basis for placing them in a different classification from other motion pictures.
>
> [*American Mini Theatres, supra*, 427 *U.S.* at 70–71, 96 *S.Ct.* 2440, 2452, 49 *L.Ed.*2d 310, 326 (emphasis added).]

Thus, a zoning ordinance may draw lines on the basis of the content of the materials sold or displayed, and the United States Supreme Court has evaluated ordinances which restrict or limit the placement of such entities "under the traditional time, place and manner standard," *Chez Sez VIII Inc. v. Poritz, supra*, 297 *N.J.Super.* at 345, 688 *A.*2d 119, because they are content neutral (as opposed to "content based") and ameliorate the undesirable "secondary effects" of sexually explicit expression. *Renton, supra*, 475 *U.S.* at 47, 106 *S.Ct.* at 928–29, 89 *L.Ed.*2d at 37 (upholding 1,000 foot buffer for adult motion picture theatres); *see also Ben Rich Trading, Inc. v. City of Vineland, supra*, 126 *F.*3d at 160; *Phillips v. Borough of Keyport*, 107 *F.*3d 164, 172 (3d Cir.) (*en banc*), *cert. denied*, —— *U.S.* ——, 118 *S.Ct.* 336, 139 *L.Ed.*2d 261 (1997); *Chez Sez VIII, supra*, 297 *N.J.Super.* at 341–45, 688 *A.*2d 119. As we have already held that *N.J.S.A.* 2C:34–7 was "aimed at ameliorating the secondary effects of sexually oriented

*supra*, upheld a similar 1,000 foot buffer for adult motion picture theatres, and we have already found that *N.J.S.A.* 2C:34–7 addresses "legitimate concerns while still allowing these businesses to advertise and operate." *Hamilton Amusement Center, Inc. v. Poritz*, 298 *N.J.Super.* 230, 240, 689 *A.*2d 201 (App. Div.) (upholding the constitutionality of *N.J.S.A.* 2C:34–7c), *certif. granted*, 150 *N.J.* 24, 695 *A.*2d 667 (1997).

businesses," *Hamilton, supra,* 298 *N.J.Super.* at 238, 689 *A.*2d 201, "[t]he key inquiry is whether the regulations (1) are narrowly drawn to serve a substantial governmental interest and (2) allow for ample alternative avenues of communication." [7] *Chez Sez VIII, supra,* 297 *N.J.Super.* at 343, 688 *A.*2d 119 (quoting *Chesapeake B & M, Inc. v. Harford County, Md.,* 58 *F.*3d 1005, 1010 (4th Cir.1995)); *see also Renton, supra,* 475 *U.S.* at 50, 106 *S.Ct.* at 930, 89 *L.Ed.*2d at 39; *Ben Rich, supra,* 126 *F.*3d at 160; *Phillips, supra,* 107 *F.*3d at 172. The issue raised in this case deals with whether the statute "unreasonably limit[s] alternative avenues of communication." *Renton, supra,* 475 *U.S.* at 47, 106 *S.Ct.* at 928, 89 *L.Ed.*2d at 37.

It is well established that the validity of statutes which regulate the existence of adult oriented businesses are subject to review under First Amendment principles. *Renton, supra,* 475 *U.S.* at 46–47, 106 *S.Ct.* at 928, 89 *L.Ed.*2d at 36–37; *Phillips, supra,* 107 *F.*3d at 172–73. As the issue before the trial judge concentrated on the defendant's right to operate its business at the location it selected, the question of whether the 1,000 foot buffer could be satisfied in another location within reasonable proximity was simply not addressed.

*Renton* involved a similar buffer zone ordinance in a single municipality where adult theatres could be accommodated. The Supreme Court has suggested that, at least in the case of small municipalities, opportunities to engage in the restricted speech in a neighboring community may be relevant to the constitutionality of a restriction of otherwise protected speech. In *Schad, supra,* a

---

[7] With respect to the former, the State "was entitled to rely on the experiences" in other areas which led to similar enactments. *Renton, supra,* 475 *U.S.* at 51, 106 *S.Ct.* at 931; *Phillips, supra,* 107 *F.*3d at 162, 173. "Time, place, manner regulations of protected speech are valid if: (1) they are justified without reference to the content of the regulated speech; (2) they are narrowly tailored to serve a significant or substantial government interest; and (3) they leave open ample alternative channels for communication." *Ben Rich, supra,* 126 *F.*3d at 160, quoting *Mitchell v. Comm'n on Adult Entertainment,* 10 *F.*3d 123, 130 (3d Cir.1993).

local zoning ordinance enumerated the permitted uses in a zone where the defendants operated an adult bookstore. 452 *U.S.* at 65, 101 *S.Ct.* at 2181, 68 *L.Ed.*2d at 678. The effect of the ordinance was to proscribe any exhibition of nude dancing within the borough, and defendants were found guilty of violating the ordinance. *Schad,* 452 *U.S.* at 64, 101 *S.Ct.* at 2180, 68 *L.Ed.*2d at 677. The United States Supreme Court reversed our decision which affirmed the convictions and held that the ordinance was unconstitutional. *Schad* distinguished *American Mini Theatres* on the basis that the ordinance in that case did not work a complete ban on all adult theatres. *Schad, supra,* 452 *U.S.* at 71–72, 101 *S.Ct.* at 2184, 68 *L.Ed.*2d at 682. The Court also held that Mount Ephraim had failed to adequately justify its substantial restriction of this protected activity, and had failed to demonstrate that the ordinance was sufficiently narrow. *Id.* at 74, 101 *S.Ct.* at 2186, 68 *L.Ed.*2d at 684.

*Schad* also rejected Mount Ephraim's argument that the ordinance was a reasonable time, place and manner restriction. In addition to holding that Mount Ephraim failed to show why live entertainment was basically incompatible with the normal activity of its commercial zones, the Court noted that Mount Ephraim had not shown that reasonable alternative channels of communication existed. 452 *U.S.* at 76, 101 *S.Ct.* at 2186, 68 *L. Ed.*2d at 685. In response to Mount Ephraim's argument that live entertainment and nude dancing was available in "close-by areas" outside the Borough, the majority stated:

> [The Borough's] position suggests the argument that if there were countywide zoning, it would be quite legal to allow live entertainment in only selected areas of the county and to exclude it from primarily residential communities, such as the Borough of Mount Ephraim. *This may very well be true,* but the Borough cannot avail itself of that argument in this case. There is no countywide zoning in Camden County, and Mount Ephraim is free under state law to impose its own zoning restrictions, within constitutional limits. Furthermore, there is no evidence in this record to support the proposition that the kind of entertainment appellants wish to provide is available in reasonably nearby areas. The courts below made no such findings; and at least in their absence, the ordinance excluding live entertainment from the commercial zone cannot constitutionally be applied to appellants so as to criminalize the activities for which they have been fined. "[O]ne is not to

have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." *Schneider v. State,* 308 *U.S.* 147, 163, 60 *S.Ct.* 146, 151, 84 *L.Ed.* 155.

[*Schad, supra,* 452 *U.S.* at 76–77, 101 *S.Ct.* at 2187, 68 *L.Ed.*2d at 685 (emphasis added).] 8

Unlike the United States Supreme Court in *Schad,* we deal with a State statute, not a municipal ordinance, and are free to interpret State law in terms of the zoning restrictions. Here, as in *Schad,* there was no evidence of alternative channels of communication outside the municipality involved, but we are satis-·fied that the Legislature of New Jersey intended *N.J.S.A.* 2C:34–7 to permit the 1,000 foot buffer zones to apply beyond the jurisdictional limits of local municipalities and to create multi-town zones in order to preserve its constitutionality.

It must be remembered that the presumption is that the legislature acted with existing constitutional law in mind and intended the act to function in a constitutional manner. The articulation of the elements which furnish that essential intent need not appear in the statutory language. The further presumption is that a

---

8 *See also* the concurring opinion of Justice Blackmun:

In *Mini Theatres* the Court dealt with locational restrictions imposed by a political subdivision, the city of Detroit, that preserved reasonable access to the regulated form of expression within the boundaries of that same subdivision. It would be a substantial step beyond *Mini Theatres* to conclude that a town or county may legislatively prevent its citizens from engaging in or having access to forms of protected expression that are incompatible with its majority's conception of "decent life" solely because these activities are sufficiently available in other locales. I do not read the Court's opinion to reach, nor would I endorse, that conclusion.

Were I a resident of Mount Ephraim, I would not expect my right to attend the theater or to purchase a novel to be contingent upon the availability of such opportunities in "nearby" Philadelphia, a community in whose decisions I would have no political voice ... Similarly, I would not expect the citizens of Philadelphia to be under any obligation to provide me with access to theaters and bookstores simply because Mount Ephraim previously had acted to ban these forms of "entertainment." This case does not require articulation of a rule for evaluating the meaning of "reasonable access" in different contexts.

[*Schad, supra,* 452 *U.S.* at 78, 101 *S.Ct.* at 2187, 68 *L.Ed.*2d at 686–87 (internal citations omitted).]

In this case we deal with a State statute adopted by the Legislature which represents the citizens of the entire State.

> statute will not be declared inoperative and unenforceable unless it is plainly in
> contravention of a constitutional mandate or prohibition. Even though a statute
> may be open to a construction which would render it unconstitutional or permit its
> unconstitutional application, it is the duty of this Court to so construe the statute as
> to render it constitutional if it is reasonably susceptible to such interpretation.
>> [*State v. Profaci*, 56 *N.J.* 346, 349–50, 266 *A.*2d 579 (1970) (internal citations
>> omitted).]

*See also Secaucus v. Hudson Cty. Bd. of Taxation*, 133 *N.J.* 482, 492–93, 628 *A.*2d 288 (1993), *cert. denied*, 510 *U.S.* 1110, 114 *S.Ct.* 1050, 127 *L.Ed.*2d 372 (1994).

With that maxim in mind, we have no hesitation in concluding that the Legislature had no intent to limit *N.J.S.A.* 2C:34–7 to municipal boundaries. Neither the statute's language nor its adoption in the wake of cases such as *Schad* and *Renton* suggests such limits, and this approach preserves the statute's constitutionality. *See Renton, supra*, 475 *U.S.* at 52–53, 106 *S.Ct.* at 932, 89 *L.Ed.*2d at 41 (upholding 1,000 foot buffer and finding that the Renton ordinance left five percent of the acreage within Renton open to use as a site for an adult theatre); *Mini Theatres, supra*, 427 *U.S.* at 71–72, 96 *S.Ct.* at 2453, 49 *L.Ed.*2d 310, 327 and n. 34 (finding that the Detroit statute, which disperses adult theatres throughout the city limits, constituted nothing more than a limitation on the place where adult films may be exhibited within that city and quoting the District Court's finding that the ordinance left "myriad locations in the City of Detroit" for the operation of an adult theatre); *D.G. Restaurant Corp. v. City of Myrtle Beach*, 953 *F.*2d 140, 147 (4th Cir.1991) (upholding ordinance prohibiting nude dancing in some areas, but not in others of city).

The fact that the Township did not endeavor to develop that "alternative avenues of communication" were available within a reasonably accessible area, does not prevent it from doing so at this point. *See Phillips, supra*, 107 *F.*3d at 173–74. *See also Ben Rich, supra*, 126 *F.*3d at 161. Prior to our decision today, there was no suggestion that the availability of adult books and videos which could not be sold in a particular municipality because of *N.J.S.A.* 2C:34–7's 1,000 buffer requirement had to be evaluated on a regional basis. If there is such reasonably accessible avail-

ability within reasonable proximity to the Saddle Brook location, *N.J.S.A.* 2C:34–7 cannot be deemed unconstitutional merely because an adult bookstore or video store cannot operate in every municipality.

In light of the First Amendment values we have addressed, we place the burden of proving such proximity on the Township. We part company with the Attorney General's argument in this respect. "The government bears the burden of showing that the remedy it has adopted does not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Ben Rich, supra,* 126 *F.*3d at 163 (quoting *Ward v. Rock Against Racism,* 491 *U.S.* 781, 799, 109 *S.Ct.* 2746, 2758, 105 *L.Ed.*2d 661, 681 (1989); *see also Phillips, supra,* 107 *F.*3d at 172–73, 177; *East Wind Realty v. Wall Bd. of Adjustment,* 218 *N.J.Super.* 412, 416, 527 *A.*2d 956 (App.Div.1987) ("[d]efendant municipality may also offer proof, if available, of alternative convenient channels for communication of the prohibited form of expression, within the municipality or nearby")).

## V.

The judgment of the Law Division declaring *N.J.S.A.* 2C:34–7 as unconstitutional is reversed, and the matter is remanded for further proceedings consistent with this opinion.