745 A.2d 540 (2000)
328 N.J. Super. 181
STATE of New Jersey, Plaintiff-Respondent,
v.
Daniel RUSSO and John Ott, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued January 10, 2000.
Decided February 4, 2000.
*542 Lorraine J. Nielsen, for defendants-appellants (A. Kenneth Weiner, attorney, East Brunswick; Ms. Nielsen, on the brief).
Thomas J. Butler, Jr., for plaintiff-respondent (Conti & Mallozzi, attorneys, Union; Mr. Butler, of counsel and on the brief).
Before Judges PETRELLA, CONLEY and COBURN.
*541 The opinion of the court was delivered by COBURN, J.A.D.
In September 1995, defendants began operating a sexually oriented business, known as "Hott 22," in a commercial zone in Union Township. The main activity of this establishment was the public presentation of nude female dancing.
Complaints were soon filed against the defendants charging that the exhibition of nude dancing violated sections 84-11 and 84-12 of the Township's sexually oriented business ordinance.[1]
Section 84-11 prohibits the operation of a sexually oriented business within one thousand feet of a variety of institutions and within five hundred feet of a residential zone. Section 84-12 requires a buffer in these terms:
Every sexually oriented business shall be surrounded by a perimeter buffer of at least fifty (50) feet in width, consisting of plantings to the satisfaction of the Municipal Planning Board. This subsection shall not apply to a sexually oriented business already lawfully operating on the effective date of this Article.
Additional complaints charged defendants with operating the business without having obtained a municipal amusement and entertainment license under Chapter 93 of the local code.
The complaints alleged violations occurring on September 11, 13, 14, 19, and 20, 1995. The offense dates are significant because the Legislature enacted N.J.S.A. 2C:34-6 and -7 effective September 15, 1995.[2] Those sections of the Criminal Code are essentially the same as the Township's sexually oriented business ordinance with the critical exception that violations of the Code are crimes of the fourth degree. In fact, the ordinance, adopted in 1993, was based on the then pending bill that eventually became N.J.S.A. 2C:34-6 and -7.
In the municipal court, the charges involving the sexually oriented business ordinance were resolved by negotiated guilty pleas. The license charges were tried on a stipulated statement of facts and defendants were found guilty. The court imposed $14,000 in fines and $540 in costs on defendant Russo and $3,500 in fines and $150 in costs on defendant Ott. By agreement with the State, defendants preserved their right to test the validity of the ordinances on appeal, their primary contention being that the imposition of criminal penalties under the ordinances violated their rights of free expression guaranteed by the First and Fourteenth Amendments of the United States Constitution.
Defendants appealed to the Law Division for a trial de novo. Initially, that court remanded the case to the municipal court for a hearing to develop facts bearing on the constitutionality of the ordinances. *543 As a result, in large part by stipulation of the parties, these relevant facts were established.
There are 5,265 acres within the Township. The commercially zoned land available for sexually oriented businesses is 32.1 acres, or .52% of the total land area. The fifty-foot buffer requirement of section 84-12 would "effectively eliminate a large portion of the ... available area." At least four sexually oriented businesses established before the sexually oriented business ordinance was enacted are operated in the commercial zone unaffected by the ordinance, which has only prospective effect.
The ordinance was adopted in response to a massive public outcry against one such business located near a residential zone. However, the governing body did not consider any evidential material regarding the secondary effects of such businesses on the public welfare.
The primary entertainment provided by Hott 22, nude female dancing, falls within the ordinance's definition of a sexually oriented business. Defendants did not apply for a municipal entertainment license, claiming, in part, that their activity was covered by a prior license issued to them at the same location when they were presenting a different form of entertainment under the business name "Cactus Club."
The Law Division judge acquitted defendants of violating section 84-11 on the theory that it was preempted by N.J.S.A. 2C:34-7a but found them guilty of violating section 84-12 and the licensing ordinance.[3] We reverse the convictions under the licensing ordinance but affirm defendants' guilt under section 84-12.

I
The licensing ordinance, section 93-1(B), provides the following, in relevant part:
It shall be unlawful to maintain, operate or conduct in the Township ... any facility where patrons are entertained by persons who pose, exercise, dance or expose themselves for compensation without first presenting an application and receiving a license to operate the respective business and paying the fee hereinafter prescribed for such license.
Enforcement of that section is addressed in three other sections of the municipal code. Section 93-3(A) requires the Chief of Police to investigate the applicant's "moral character." Section 93-3(B) provides that if the Chief finds the applicant's "moral character ... unsatisfactory," he shall "endorse on such application his ... disapproval thereof and his reasons for same...." Section 93-3(C)(2) provides that if the Chief disapproves the application, the governing body is required to reject the license.
The Law Division sustained defendants' convictions under the licensing ordinance because they had not applied for the license. But when, as here, freedom of expression is involved, a "[d]efendant can challenge the permit system even though he did not apply for, nor was denied, a permit." State v. Schad, 160 N.J. 156, 179, 733 A.2d 1159 (1999) (citing City of Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 755, 108 S.Ct. 2138, 2143, 100 L.Ed.2d 771 (1988)).
The problem with these ordinances is that they give the Chief of Police unfettered discretion. The governing principles were set forth in State v. Schad, supra:
*544 An ordinance that imposes a permit requirement in order to engage in communicative conduct is permissible if it includes "narrow, objective and definite standards to guide the licensing authority." The granting of a permit, however, cannot be based on the uncontrolled will of an official. Unbridled discretion granted by a statute or ordinance renders it unconstitutional even if applied in a constitutional manner.

[Ibid. (citations omitted).]
In Borough of Collingswood v. Ringgold, 66 N.J. 350, 331 A.2d 262 (1975), appeal dismissed by Ringgold v. Borough of Collingswood, 426 U.S. 901, 96 S.Ct. 2220, 48 L.Ed.2d 826 (1976), a similar ordinance was invalidated because it did "not mandate denial for certain particularized egregious conduct nor furnish any clue as to what standards the Chief [of Police] may bring to bear on the issue of when to deny or when to grant a permit in the face of a conviction or reported unethical business practices." Id. at 367, 331 A.2d 262.
Therefore, we reverse defendants' convictions under the licensing ordinance and turn to the subject of the buffer zone.

II
In considering the violations of the buffer zone established by section 84-12, a distinction must be drawn between those offenses occurring before and after the effective date of N.J.S.A. 2C:34-6 and -7.[4] Although we will consider first the pre-statute offenses, references to the statute and cases addressing its validity are helpful in evaluating the validity of the ordinance since the ordinance tracks the statutory language.
A. The pre-statute offenses
In Township of Saddle Brook v. A.B. Family Center, Inc., 307 N.J.Super. 16, 32, 704 A.2d 81 (App.Div.1998), aff'd, 156 N.J. 587, 722 A.2d 530 (1999), the court held that N.J.S.A. 2C:34-7a, which essentially appears in the ordinance as section 84-11, was constitutional on its face. In Hamilton Amusement Center v. Verniero, 156 N.J. 254, 285, 716 A.2d 1137 (1998), cert. denied, ___ U.S. ___, 119 S.Ct. 2365, 144 L.Ed.2d 770 (1999), the Court held that N.J.S.A. 2C:34-7c (governing exterior signs) was constitutional. In both instances, the constitutional challenges were rejected because the provisions were content-neutral and were found to serve substantial public interests. Under the principles set forth in those cases, the question with respect to section 84-12, which is similar to N.J.S.A. 2C:34-7b, comes down to this: does this obviously content-neutral ordinance serve a substantial public interest without unduly limiting the expressive freedoms guaranteed by the First and Fourteenth Amendments of the United States Constitution?
Defendants correctly observe that the burden of proving a substantial public interest is on the State. Hamilton Amusement Ctr., supra, 156 N.J. at 269, 716 A.2d 1137. There are two aspects of this burden: the State must prove that the law is "genuinely concerned with mitigating the adverse secondary effects of sexually oriented businesses," id. at 273, 716 A.2d 1137, and that it "directly advances the government's asserted interests." Id. at 274, 716 A.2d 1137.
Defendants go on to argue that since there was no evidence presented to the governing body or to the municipal court bearing on the alleged negative secondary effects of nude dancing, the State failed to meet its burden. We reject that contention for these reasons.
*545 Before the adoption of the ordinance, the United States Supreme Court had already "recognized that sexually oriented businesses can cause concrete and non-speculative side effects that government can target. These effects include promoting juvenile delinquency, contributing to an overall increase in crime, creating an environment that leads to the general deterioration of neighborhoods, and lowering property values." Id. at 271, 716 A.2d 1137 (citing City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 51, 106 S.Ct. 925, 931, 89 L.Ed.2d 29, 40 (1986)). In short, "a national consensus [has] emerge[d] regarding the [unfortunate] secondary effects of sexually oriented businesses." Id. at 270, 716 A.2d 1137. Although the State can meet its burden "by references to studies pertaining to other jurisdictions [and] legislative history," id. at 271, 716 A.2d 1137, it may also rely on "consensus, and even common sense." Ibid. Furthermore, our Supreme Court has held that a municipality may reasonably restrict the outside of sexually oriented businesses "to buffer the visual and other impacts of those businesses on the neighborhood." Id. at 277-78, 716 A.2d 1137.
Given those principles of law, the first aspect of the burden of proof is clearly satisfied by section 84-12 which merely provides buffer protection.
We turn to the second aspect of the burden of proofwhether section 84-12 directly advances the government's asserted interests without unduly limiting expressive freedoms.
Considered on its face, section 84-12 obviously serves many of the same purposes served by N.J.S.A. 2C:34-7a and 7c, and, as we have noted, those provisions have been sustained as constitutional. Therefore, although the issue is not before us, we have no doubt that N.J.S.A. 2C:34-7b is constitutional on its face.
The ordinance, however, is broader than the statute. The statute's buffer provision is expressly tied to the purpose of "imped[ing] the view of the interior of the premises in which the business is located." N.J.S.A. 2C:34-7b. Unquestionably that purpose relates in part to the protection of minors from exposure to sexually oriented activity, a purpose recognized as valid in Hamilton Amusement Center, supra, 156 N.J. at 276, 716 A.2d 1137.
The ordinance is broader than the statute because it does not limit the buffer to plantings necessary to impede a view of the interior. Under the ordinance, the planning board could require perimeter plantings around the entire building. But as a matter of common sense this requirement directly advances several substantial public purposes: helping to preserve neighborhoods, preventing urban blight, and helping to distance such businesses from minors who might be in the area. We emphasize in this regard that under the statute, municipalities are authorized to "require the perimeter buffer to meet additional requirements or standards." N.J.S.A. 2C:34-7b. Therefore, we reject defendants' facial attack on this section of the ordinance.
Defendants also attack section 84-12 on the ground that it has the effect of too severely limiting the area in the Township for such businesses. But the facts indicate that some portion of the 32.1 acres of commercially zoned property could be used for sexually oriented businesses without violation of the buffer zone and that there are already at least four such businesses operating in the Township. Given those facts, we believe the ordinance does not unduly restrict expressive rights in Union Township.
Another argument offered by defendants is that section 84-12 is not severable from section 84-11, which they contend excessively restricts expressive rights. Even assuming that section 84-11 is defective, the argument is unsound for a number of reasons, the first being that section 4 of the sexually oriented business ordinance provides that "[a]ll provisions of *546 this Ordinance are intended to be severable."
Where the provisions of an ordinance are severable, "the invalidity of one of the separate parts does not render the entire ordinance invalid provided the remainder contains the essentials of a complete enactment." Gilman v. City of Newark, 73 N.J.Super. 562, 600-01, 180 A.2d 365 (Law Div.1962) (citations omitted); Kennedy v. City of Newark, 29 N.J. 178, 187, 148 A.2d 473 (1959). Severability is primarily a question that turns on the intent of the enacting body. Washington Nat'l Ins. Co. v. Board of Review, 1 N.J. 545, 556, 64 A.2d 443 (1949).
Since the governing body's intent to achieve severability is clearly stated in the ordinance, the only question is whether the remainder of the ordinance contains the essential elements of a complete enactment. Section 84-11 is concerned with maintaining distances that sexually oriented businesses must be from other places or zones. Section 84-12 is unconcerned with location; it simply provides for a buffer and its standards do not depend in any way on the other section. Given the validity of the balance of the ordinance, all the necessary elements of a complete enactment are present in section 84-12.
Next, defendants contend that section 84-12 is unconstitutionally vague, relying on State v. Cameron, 100 N.J. 586, 591-94, 498 A.2d 1217 (1985); State v. Lee, 96 N.J. 156, 165-66, 475 A.2d 31 (1984); and Town Tobacconist v. Kimmelman, 94 N.J. 85, 118, 462 A.2d 573 (1983). Their reliance on those cases is misplaced.
Essentially, their argument is that this section of the municipal code is difficult to interpret and vests unlimited discretion in the municipal planning board. But that does not make it vague in the constitutional sense referred to in those cases, namely the failure of a law to provide citizens and law enforcement officials with adequate guidelines sufficient to forewarn citizens of what behavior is prohibited and to prevent arbitrary enforcement. Town Tobacconist, supra, 94 N.J. at 118, 462 A.2d 573. To avoid prosecution here, a citizen need only apply to the planning board for its approval of the proposed buffer. See William M. Cox, New Jersey Zoning and Land Use Administration § 33-2.2 at 588-89 (1999), for a discussion of the cases usually requiring exhaustion of administrative remedies before resort to the courts. Once that approval is obtained, the guidelines governing any possible prosecution are established, and the citizen is fully capable of avoiding prosecution by compliance with the board's ruling.
Defendant's last argument is based on section 93-6C of the Township's ordinance governing licensing of amusement and entertainment, which provides the following in relevant part:
All entertainment by persons who pose, exercise, dance or expose themselves for compensation shall be subject to the following regulations:
....
(2) Indecent exposure by means of unduly abbreviated costumes shall be prohibited.
Defendants rely on this provision, claiming that it has the effect of completely prohibiting nude dancing in the Township. Assuming that construction is correct, we are satisfied that this provision of the ordinance was repealed by implication as a consequence of the adoption of the sexually oriented business ordinance. See Isola v. Borough of Belmar, 34 N.J.Super. 544, 550, 112 A.2d 738 (App.Div.1955) ("In the absence of an express repealer, the indication of an intention to effect a repeal of prior legislation must be clear and compelling."). The governing body's intent in this regard meets that test.
Therefore, we reject defendants' challenges to section 84-12 with respect to offenses occurring before the effective date of N.J.S.A. 2C:34-6 and -7.
*547 B. The post-statute offenses
With respect to offenses occurring after the statute's effective date, the question is whether N.J.S.A. 2C:34-7b preempts section 84-12 of the ordinance.
Under N.J.S.A. 2C:1-5d, "the local government units of this State may neither enact nor enforce any ordinance ... conflicting with, or preempted by, any provision of this code...."
The factors to be considered in preemption analysis appear in Overlook Management Corp. v. Rent Control Board, 71 N.J. 451, 366 A.2d 321 (1976):
1. Does the ordinance conflict with state law, either because of conflicting policies or operational effect (that is, does the ordinance forbid what the Legislature has permitted or does the ordinance permit what the Legislature has forbidden)?
2. Was the state law intended, expressly or impliedly, to be exclusive in the field?
3. Does the subject matter reflect a need for uniformity? ...
4. Is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation?
5. Does the ordinance stand "as an obstacle to the accomplishment and execution of the full purposes and objectives" of the Legislature?
[Id. at 461-62, 366 A.2d 321 (citations omitted).]
Since the statute itself provides that municipalities may adopt buffer regulations exceeding those provided in the statute and since that is precisely what section 84-12 does, there is no conflict, and under Overlook there is no justification for finding preemption.[5] Therefore, we affirm these convictions.
Affirmed in part; reversed in part; and remanded to the Law Division for resentencing in accord with R. 3:23-8(e).
APPENDIX A
Section 1. As enacted in this Ordinance:
a. "Sexually oriented business" means:
(1) A commercial establishment which as one of its principal business purposes offers for sale, rental or display any of the following:
Books, magazines, periodicals or other printed material, or photographs, films, motion pictures, video cassettes, slides or other visual representations which depict or describe a "specified sexual activity" or "specified anatomical area"; or still or motion picture machines, projectors or other image-producing devises which show images to one person per machine at any one time, and where the images so displayed are characterized by the depiction of a "specified sexual activity" or ["]specified anatomical area"; or instruments, devices or paraphernalia which are designed for use in connection with a "specified sexual activity"; or
(2) A commercial establishment which regularly features waiters, waitresses, dancers or other live performances characterized by the exposure of a "specified anatomical area" or by a "specified sexual activity," or which regularly shows films, motion pictures, video cassettes, slides, or other photographic representations which depict or describe a "specified sexual activity" or "specified anatomical area"; or
(3) A hotel, motel or similar commercial establishment which offers accommodations to the public for any form of consideration, and which provides patrons with closed-circuit television transmissions, films, motion pictures, video cassettes, slide or other visual representations which *548 depict or describe a "specified sexual activity" or "specified anatomical area", and has a sign visible form [sic] a public right of way which advertises the availability of these visual representations, or offers a sleeping room for rent for a period of time that is less than 10 hours; or allows an occupant of a sleeping room to sub-rent the room for a period of time that is less than 10 hours.
b. "Person" means an individual, proprietorship, partnership, corporation, association, or other legal entity.
c. "Specified anatomical area" means:
(1) Less than completely and opaquely covered human genitals, pubic region, buttock or female breasts below a point immediately above the top of the areola; or
(2) Human male genitals in a discernibly turgid state, even if covered.
(d). "Specified sexual activity" means:
(1) The fondling or other erotic touching of covered or uncovered human genitals, pubic region, buttock or female breast; or
(2) Any actual or simulated act of human masturbation, sexual intercourse or deviate sexual intercourse.
Section 2. No person shall operate a sexually oriented business within 1,000 feet of any existing sexually oriented business, or any church, synagogue, temple or other place of public worship, or any elementary or secondary school or any school bus stop, or any municipal or county playground or place of public resort and recreation, or within 500 feet of any zoned for residential use or within 1,000 feet of a public or private recreational facility including, but, not limited to, bowling alleys, skating rinks, pool parlors, video arcades or similar enterprises catering to or frequently attended by minors under the age of eighteen (18) years. This subsection shall not apply to a sexually oriented business already lawfully operating on the effective date of this act where another sexually oriented business, an elementary or secondary school or school bus stop, or any municipal or county playground or place of public resort and recreation is subsequently established within 1,000 feet, or a residential district or residential lot is subsequently established within 500 feet.
b. Every sexually oriented business shall be surrounded by a perimeter buffer of at least 50 feet in width, consisting of plantings to the satisfaction of the municipal planning board. This subsection shall not apply to a sexually oriented business already lawfully operating on the effective date of this act.
c. No sexually oriented business which regularly shows films, motion pictures, video cassettes, slides or other photographic representations which depict or describe a "specified sexual activity" or "specified anatomical area" shall offer for public use any private booths, screens, enclosures or other devices which facilitate sexual activity by patrons.
d. A sexually oriented business shall display one exterior sign giving notice that the premises are off limits to minors.
Section 3. Any person, firm or corporation violating any of the provision[s] of this Ordinance shall be subject to one (1) or more of the following: imprisonment in the county jail or in any other place provided by the municipality for the detention of prisoners for any term not exceeding ninety (90) days or by a fine not exceeding one thousand dollars ($1,000) or by a period of community service not exceeding ninety (90) days, to become effective on the effective date of this Ordinance.
Section 4. All provisions of this Ordinance are intended to be severable.
Section 5. This Ordinance shall be effective immediately upon publication as provided by Law.
Section 2 was codified as Code § 84-11; and section 2b was codified as Code § 84-12.

*549 APPENDIX B
2C:34-6 Definitions. As used in sections 2 and 3 of this act:
a. "Sexually oriented business" means:
(1) A commercial establishment which as one of its principal business purposes offers for sale, rental, or display any of the following:
Books, magazines, periodicals or other printed material, or photographs, films, motion pictures, video cassettes, slides or other visual representations which depict or describe a "specified sexual activity" or "specified anatomical area"; or still or motion picture machines, projectors or other image-producing devices which show images to one person per machine at any one time, and where the images so displayed are characterized by the depiction of a "specified sexual activity" or "specified anatomical area"; or instruments, devices, or paraphernalia which are designed for use in connection with a "specified sexual activity"; or
(2) A commercial establishment which regularly features live performances characterized by the exposure of a "specified anatomical area" or by a "specified sexual activity," or which regularly shows films, motion pictures, video cassettes, slides, or other photographic representations which depict or describe a "specified sexual activity" or "specified anatomical area".
b. "Person" means an individual, proprietorship, partnership, corporation, association, or other legal entity.
c. "Specified anatomical area" means:
(1) Less than completely and opaquely covered human genitals, pubic region, buttock or female breasts below a point immediately above the top of the areola; or
(2) Human male genitals in a discernibly turgid state, even if covered.
d. "Specified sexual activity" means:
(1) The fondling or other erotic touching of covered or uncovered human genitals, pubic region, buttock or female breast; or
(2) Any actual or simulated act of human masturbation, sexual intercourse or deviate sexual intercourse.
2C:34-7. Sexually oriented business; location, building requirements; penalty. a. Except as provided in a municipal zoning ordinance adopted pursuant to N.J.S.2C:34-2, no person shall operate a sexually oriented business within 1,000 feet of any existing sexually oriented business, or any church, synagogue, temple or other place of public worship, or any elementary or secondary school or any school bus stop, or any municipal or county playground or place of public resort and recreation, or any hospital or any child care center, or within 1,000 feet of any area zoned for residential use. This subsection shall not apply to a sexually oriented business already lawfully operating on the effective date of this act where another sexually oriented business, an elementary or secondary school or school bus stop, or any municipal or county playground or place of public resort and recreation, or any hospital or any child care center, is subsequently established within 1,000 feet, or a residential district or residential lot is subsequently established within 1,000 feet.
b. Every sexually oriented business shall be surrounded by a perimeter buffer of at least 50 feet in width with plantings, fence, or other physical divider along the outside of the perimeter sufficient to impede the view of the interior of the premises in which the business is located. The municipality may, by ordinance, require the perimeter buffer to meet additional requirements or standards. This subsection shall not apply to a sexually oriented business already lawfully operating on the effective date of this act.
c. No sexually oriented business shall display more than two exterior signs, consisting of one identification sign and one sign giving notice that the premises are off limits to minors. The identification sign *550 shall be no more than 40 square feet in size.
d. A person who violates this section is guilty of a crime of the fourth degree.
NOTES
[1] The ordinance, No. 4266, enacted on August 10, 1993, as amended by ordinance No. 4271, enacted on September 14, 1993, is set forth in Appendix A of this opinion.
[2] These statutes are set forth in Appendix B.
[3] Although the Law Division judge "affirmed" some of defendants' convictions, he failed to resentence them, thereby ignoring the requirements of R. 3:23-8(e). When a Law Division judge conducts a trial de novo and finds a defendant guilty the sentence imposed by the municipal court may not be affirmed. Rather, the judge must "exercise ... independent judgment ... in the matter of sentence." State v. States, 44 N.J. 285, 293, 208 A.2d 633 (1965).
[4] The Law Division judge held that the charges under section 84-11 were preempted by N.J.S.A. 2C:34-7a without distinguishing those offenses that occurred before the statute's effective date. Although we believe the distinction should have been drawn and the merits of section 84-11 addressed, the State has not filed a cross-appeal. Therefore, further comment on this issue is unnecessary.
[5] Obviously a prosecution under the ordinance might have double jeopardy implications for a prosecution of the fourth-degree crime set forth in the statute. But this problem may be resolved by employment of the procedures described in State v. Dively, 92 N.J. 573, 589-90, 458 A.2d 502 (1983).