·722 A.2d 530

TOWNSHIP OF SADDLE BROOK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, AND ATTORNEY GENERAL OF NEW JERSEY, INTERVENOR–RESPONDENT, v. A.B. FAMILY CENTER, INC., RHODESTAR REALTY COMPANY AND STUART RHODES, INDIVIDUALLY, DEFENDANTS–APPELLANTS.

Argued November 30, 1998—Decided January 28, 1999.

588

*Dennis J. Oury* argued the cause for appellants (*Oury & Mizdol*, attorneys).

*Brian M. Chewcaskie* argued the cause for respondent (*Gittleman, Muhlstock, Chewcaskie & Kim*, attorneys).

*Bertram P. Goltz, Jr.*, Deputy Attorney General, argued the cause for intervenor-respondent (*Peter Verniero*, Attorney General of New Jersey, attorney; *Joseph L. Yannotti*, Assistant Attorney General, of counsel).

The opinion of the Court was delivered by

STEIN, J.

This appeal concerns the validity of governmental regulations that effectively bar an adult book store from operating in the Township of Saddle Brook (Township). We affirm the judgment of the Appellate Division remanding the matter to the Law Division for further proceedings, substantially for the reasons set forth in that court's opinion. *Saddle Brook v. A.B. Family Center, Inc.*, 307 *N.J.Super.* 16, 26–33, 704 *A.2d* 81 (App.Div.1998). We add these comments to assist the Law Division in the conduct of the remand proceeding.

The opinion below thoroughly describes the factual background and procedural history, *id.* at 20–23, 704 *A.2d* 81, but a brief summary will provide a context for this Court's supplemental observations. In September 1995, Petitioner A.B. Family Center (Family Center) sought permission from the Township to operate a store specializing in the sale and rental of adult videos and related merchandise. The Township denied a certificate of occupancy, asserting that the applicant (1) was required to obtain site

plan approval; (2) had not demonstrated compliance with the parking provisions of the zoning ordinance; and (3) proposed the unlawful use of nonconforming signs. After an unsuccessful appeal to the Board of Adjustment, Family Center opened its business in reliance on a 1986 certificate of occupancy for the premises, and continued operations in defiance of a cease and desist order issued by the zoning officer. The Township instituted this action to enjoin the violation of its ordinances.

In April 1996, the Township filed an amended complaint alleging that Family Center's business also violated *N.J.S.A.* 2C:34-7, which prohibits, unless expressly permitted by municipal ordinance, the operation of a sexually oriented business within 1000 feet of any place of public worship, any school or school bus stop, any municipal or county playground or place of public recreation, or any area zoned for residential use. The Law Division heard testimony from the Township's zoning officer that a sexually oriented business could not operate at any site within the entire township without violating the distance restrictions of the state statute.

In the Law Division, the Township also asserted that Family Center's business violated the provisions of the Township's Peace and Good Order ordinance, adopted in January 1996, which barred adult bookstores and video stores from operating at any location within the Township.

The Law Division determined that the Township had selectively enforced its site plan, parking, and sign ordinances to prevent Family Center from operating, and denied injunctive relief based on the alleged ordinance violations. That court also held that the Township's Peace and Good Order ordinance was unconstitutional because the Township failed to demonstrate that a complete prohibition of sexually oriented businesses served a compelling local interest or that such a prohibition constituted the least restrictive means for achieving the Township's objectives. The Appellate Division agreed with the Law Division's rulings on both those issues, 307 *N.J.Super.* at 23-26, 704 *A.*2d 81, and we denied

the Township's cross-petition for certification seeking to contest those determinations. 153 *N.J.* 217, 708 *A.2d* 68 (1998).

The Law Division also concluded that *N.J.S.A.* 2C:34–7 was unconstitutional as applied to the Township "on the ground[ ] that there is no area within the town that does not fall within [the statute's] 1,000 foot barrier." 307 *N.J.Super.* at 27, 704 *A.2d* 81. The Appellate Division rejected that conclusion, noting that because *N.J.S.A.* 2C:34–7 is a state statute its validity should not be determined solely on the basis of municipal boundaries, and acknowledging that "locations ... outside the Township's boundaries can satisfy the constitutional requirement that the restriction on speech leave open [alternative] channels of communication." *Ibid.* Because that contention had not been pressed below, the Appellate Division remanded the matter to the Law Division to conduct an evidentiary hearing on the availability outside of the Township of sites for sexually oriented businesses within reasonable proximity to Family Center's site in Saddle Brook. The court imposed on the Township the burden of proving the availability of such sites. *Id.* at 32–33, 704 *A.2d* 81.

I

The question presented is one of first impression in this jurisdiction. We are in accord with the Appellate Division's conclusion that the constitutionality of a *state statute* restricting available locations of sexually oriented businesses need not be determined solely by reference to the boundaries of the municipality in which the business challenging the restriction seeks to locate. The basic criteria for testing the constitutionality of analogous restrictions on sexually oriented businesses are set forth in the United States Supreme Court's opinion in *Renton v. Playtime Theatres, Inc.,* 475 *U.S.* 41, 106 *S.Ct.* 925, 89 *L.Ed.2d* 29 (1986). In *Renton,* the Court sustained the constitutionality of an ordinance adopted by the City of Renton, Washington, prohibiting any adult motion picture theater from locating within 1000 feet of any residential zone or dwelling, church, or park, or within one

mile of any school. The Court sustained the finding of the District Court that the ordinance's adoption was "unrelated to the suppression of free expression," and that the City's dominant purpose was to "prevent crime, protect the city's retail trade, maintain property values, and generally 'protec[t] and preserv[e] the quality of neighborhoods, commercial districts, and the quality of urban life.'" *Id.* at 48, 106 *S.Ct.* at 929, 89 *L.Ed.*2d at 38. The Court described the *Renton* ordinance as consistent with the standard for characterizing speech regulations as "content-neutral," because it could be justified without regard to the content of the regulated speech. Initially determining that the *Renton* ordinance was "designed to serve a substantial governmental interest," the Court reaffirmed that "a city's 'interest in attempting to preserve the quality of urban life is one that must be accorded high respect.'" *Id.* at 50, 106 *S.Ct.* at 930, 89 *L.Ed.*2d at 39 (quoting *Young v. American Mini Theatres, Inc.*, 427 *U.S.* 50, 71, 96 *S.Ct.* 2440, 2453, 49 *L.Ed.*2d 310, 327 (1976) (plurality opinion)). Concerning the issue relevant to this appeal—whether the *Renton* ordinance allowed for reasonable alternative avenues of communication—the Court noted that the ordinance left available approximately 520 acres, or more than five percent of the city's land area, for use as adult theater sites. Responding to the contention that "practically none" of the undeveloped land was currently being marketed for sale or lease, the Court noted "[t]hat respondents must fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees, does not give rise to a First Amendment violation." *Id.* at 54, 106 *S.Ct.* at 932, 89 *L.Ed.*2d at 41–42.

In *Schad v. Borough of Mount Ephraim*, 452 *U.S.* 61, 101 *S.Ct.* 2176, 68 *L.Ed.*2d 671 (1981), the Supreme Court invalidated a municipal ordinance that prohibited all live entertainment, including nonobscene nude dancing, in the Borough's commercial zoning district. The Court determined that the ordinance could not be sustained as a reasonable "time, place, and manner" restriction on commercial speech. The Court noted that the Borough did not "identify the municipal interests making it reasonable to exclude

all commercial live entertainment but to allow a variety of other commercial uses in the Borough," and that the ordinance failed to "leave open adequate alternative channels of communication." *Id.* at 74–76, 101 *S.Ct.* at 2186, 68 *L.Ed.*2d at 684–85. In response to the Borough's contention that the ordinance was sustainable because the prohibited activities were permitted in neighboring municipalities, the Court stated:

> The Borough nevertheless contends that live entertainment in general and nude dancing in particular are amply available in close-by areas outside the limits of the Borough. Its position suggests the argument that if there were countywide zoning, it would be quite legal to allow live entertainment in only selected areas of the county and to exclude it from primarily residential communities, such as the Borough of Mount Ephraim. This may very well be true, but the Borough cannot avail itself of that argument in this case. There is no countywide zoning in Camden County, and Mount Ephraim is free under state law to impose its own zoning restrictions, within constitutional limits. Furthermore, there is no evidence in this record to support the proposition that the kind of entertainment appellants wish to provide is available in reasonably nearby areas. The courts below made no such findings; and at least in their absence, the ordinance excluding live entertainment from the commercial zone cannot constitutionally be applied to appellants so as to criminalize the activities for which they have been fined.
>
> [*Ibid.*, 101 *S.Ct.* at 2186–87, 68 *L.Ed.*2d at 685.]

Justice Blackmun, in his concurring opinion, also addressed the question whether a municipality constitutionally may restrict protected speech if that form of expression is permitted in adjacent communities:

> My other observation concerns the suggestion that a local community should be free to eliminate a particular form of expression so long as that form is available in areas reasonably nearby. In *Mini Theatres* the Court dealt with locational restrictions imposed by a political subdivision, the city of Detroit, that preserved reasonable access to the regulated form of expression within the boundaries of that same subdivision. It would be a substantial step beyond *Mini Theatres* to conclude that a town or county may legislatively prevent its citizens from engaging in or having access to forms of protected expression that are incompatible with its majority's conception of the "decent life" solely because these activities are sufficiently available in other locales. I do not read the Court's opinion to reach, nor would I endorse, that conclusion.
>
> ... This case does not require articulation of a rule for evaluating the meaning of "reasonable access" in different contexts. The scope of relevant zoning authority varies widely across our country, as do geographic configurations and types of commerce among neighboring communities, and this issue will doubtless be resolved on a case-by-case basis.
>
> [*Id.* at 77–79, 101 *S.Ct.* at 2187–88, 68 *L.Ed.*2d at 686–87 (footnote omitted).]

Some federal courts have either implied or held that the constitutionality of countywide zoning ordinances restricting protected speech should be evaluated on a regional basis, and not determined by whether the use is permitted in the municipality where the applicant seeks to locate. *See, e.g., International Eateries of Am., Inc. v. Broward County,* 941 F.2d 1157 (11th Cir.1991) (upholding county zoning ordinance prohibiting adult night clubs within 500 feet of residential districts or within 1000 feet of churches, and noting that ordinance allowed for reasonable alternative avenues of communication because twenty-six other sites in Broward County could accommodate applicant's nonobscene nude dancing establishment), *cert. denied,* 503 *U.S.* 920, 112 *S.Ct.* 1294, 117 *L.Ed.*2d 517 (1992); *Keego Harbor Co. v. City of Keego Harbor,* 657 F.2d 94, 98 (6th Cir.1981) (invalidating city ordinance prohibiting adult movie theatres in all zoning districts, but noting that "[i]t might be that the First Amendment burden would be rendered incidental if, for example, county-wide zoning were present to ensure that there [was] reasonable access to the protected activity in nearby areas."); *Ranch House, Inc. v. Amerson,* 22 *F.Supp.*2d 1296, 1309 (N.D.Ala.1998) (upholding Alabama state statute prohibiting operation of "adult-only" enterprises within 1000 feet of residences, churches, schools, parks or recreation centers and noting that availability of sites permitting such enterprises within same county demonstrates that statute did not unreasonably restrict alternative avenues of expression); *Wolfe v. Village of Brice,* 997 *F.Supp.* 939, 944–45 (S.D.Ohio 1998) (invalidating village ordinance imposing minimum distance restriction on adult entertainment facilities that effectively prohibited plaintiff's business from locating anywhere within village; rejecting contention that availability of sites for such use in adjacent City of Columbus could sustain ordinance absent any proof in record of countywide zoning).

In addressing whether alternative sites for a protected activity should be considered in determining the availability of other adequate channels of communication, courts have focused on

whether such sites are feasible alternatives and, consistent with *Renton,* have de-emphasized the significance of higher costs in determining feasibility. *See Woodall v. City of El Paso,* 49 *F.*3d 1120, 1124 (5th Cir.) (describing factors material to determining availability of alternative sites and noting that "[t]here is no requirement that an adult business be able to obtain existing commercial sites at low cost ... to ensure its prosperity."), *cert. denied,* 516 *U.S.* 988, 116 *S.Ct.* 516, 133 *L.Ed.*2d 425 (1995); *Topanga Press, Inc. v. City of Los Angeles,* 989 *F.*2d 1524, 1531 (9th Cir.1993) (listing factors that determine whether alternative site is part of relevant market and emphasizing that whether site "will result in lost profits [or] higher overhead costs" is irrelevant to whether site should be included in determining relevant market), *cert. denied,* 511 *U.S.* 1030, 114 *S.Ct.* 1537, 128 *L.Ed.*2d 190 (1994).

The federal cases also emphasize that in determining the sufficiency of alternative avenues of communication a relevant inquiry is whether the extent of the alternative opportunities to locate the regulated use is commensurate with the size of the relevant market. *See Walnut Properties, Inc. v. City of Whittier,* 861 *F.*2d 1102, 1107–09 (9th Cir.1988) (holding unconstitutional city ordinance prohibiting sexually oriented businesses from locating within 500 feet of residences or within 1000 feet of schools, churches, parks or other such businesses based on finding that "paucity of alternative sites is glaring" and that ordinance "does not allow sufficient alternatives for relocation of adult businesses."), *cert. denied,* 490 *U.S.* 1006, 109 *S.Ct.* 1641, 104 *L.Ed.*2d 157 (1989); *CLR Corp. v. Henline,* 702 *F.*2d 637, 639 (6th Cir.1983) (invalidating city ordinance prohibiting sexually oriented businesses from locating within 500 feet of any church, school or residence or within 1000 feet of similar business based on finding that in city with 60,000 people occupying twenty-five square miles ordinance would permit only two to four sexually oriented businesses and permitted sites would be restricted to within 2500 feet of frontage in B–2 business district); *Alexander v. City of Minneapolis,* 698 *F.*2d 936, 938–39 (8th Cir.1983) (invalidating distance prohibition

on sexually oriented businesses applicable to both new and existing businesses based on District Court's determination that ordinance would "substantially [reduce] the number of adult bookstores and theatres in Minneapolis" and "no new adult bookstores or theatres would be able to open."); *Basiardanes v. City of Galveston*, 682 *F*.2d 1203, 1213–16 (5th Cir.1982) (invalidating Galveston ordinance imposing distance restrictions on sexually oriented businesses that effectively barred such establishments from central business district and limited their location to areas zoned for industrial use that lacked access roads and included no rental establishments); *cf. Dumas v. City of Dallas*, 648 *F.Supp.* 1061, 1070–71 (N.D.Tex.1986) (upholding Dallas ordinance imposing distance restrictions on sexually oriented businesses based on finding that ordinance "permits location in several areas stretching from the inner city area to the north and south suburbs, [and] accessed by ... major thoroughfares.... Eight to ten percent of the city's total area—21,000 acres—is available."), *aff'd sub nom. FW/PBS, Inc. v. City of Dallas*, 837 *F*.2d 1298 (5th Cir.1988), *cert. granted on other grounds*, 489 *U.S.* 1051, 109 *S.Ct.* 1309, 103 *L.Ed*.2d 578 (1989), *aff'd in part, vacated in part*, 493 *U.S.* 215, 110 *S.Ct.* 596, 107 *L.Ed*.2d 603 (1990).

## II

█ The relevant decisional law demonstrates that the Law Division's responsibilities on remand are formidable. Although *N.J.S.A.* 2C:34–7 is not a statewide *zoning* regulation for sexually oriented businesses, it does constitute a statewide restriction on their location. Nor is our characterization of the statute as a statewide restriction on the location of sexually oriented businesses affected by the fact that the state statute expressly authorizes municipalities, at their option, to override the statutory limitation by a local zoning ordinance more permissive than the state statute. Absent such an election by affected municipalities the statutory limitations will govern. Accordingly, the statute's constitutionality as applied will depend on whether its application

to Saddle Brook allows adequate alternative channels of communication within the relevant market area.

The Law Division will be required preliminarily to determine the market area relevant to the Family Center site in order to ascertain the adequacy of alternative available sites. We anticipate that the parties will offer expert testimony on that issue to assist the Law Division in its determination. As the Appellate Division opinion suggests, the relevant market area should include areas located in other municipalities "within reasonable proximity to the Saddle Brook location." 307 *N.J.Super.* at 33, 704 *A.*2d 81. We infer that the trial court's determination of reasonable proximity may be informed by evidence of regional marketing patterns, availability of public transportation and access by automobiles, geographical distribution of customers at comparable sexually oriented businesses, and other factors deemed relevant by the parties and the court. The trial court's ascertainment of the availability of alternative sites necessarily will depend in part on the provisions of zoning ordinances enacted by neighboring municipalities that permit, prohibit, restrict or affect the feasibility of establishing sexually oriented businesses. After determining the relevant market and the relative availability of sites within that market, the Law Division must then determine whether the extent of the availability of alternative channels of communication, in relation to the size of the relevant market, is adequate to sustain the constitutionality of *N.J.S.A.* 2C:34–7 as applied to the Family Center site.

Finally, we concur with the Appellate Division's conclusion that the Township should bear the burden of proving the adequacy of available alternative avenues of communication within the relevant marketing area. 307 *N.J.Super.* at 33, 704 *A.*2d 81. The Attorney General relies on *J.E. on Behalf of G.E. v. State of New Jersey, Department of Human Services, Division of Developmental Disabilities,* 131 *N.J.* 552, 569–70, 622 *A.*2d 227 (1993), for the principle that "the party with greater expertise and access to relevant information should bear [the] evidentiary burden[ ]," and

argues that Family Center is the party best suited to produce evidence concerning available alternative sites for sexually oriented businesses. Whether Family Center is better equipped than the Township and the State to bear the burden of proof at the remand hearing is debatable. We decline to disturb the Appellate Division's allocation of the burden of proof because we believe it to be consistent with First Amendment decisional law that recognizes the fairness of imposing on the public body that elects to restrict protected speech the obligation of demonstrating that its restrictions are reasonably tailored to achieve its objectives, are not more intrusive than necessary, and provide adequate available alternative avenues of communication. See *Schad, supra,* 452 *U.S.* at 74, 101 *S.Ct.* at 2186, 68 *L.Ed.*2d at 689; *Ben Rich Trading, Inc. v. City of Vineland,* 126 *F.*3d 155, 163 (3d Cir.1997); *Phillips v. Borough of Keyport,* 107 *F.*3d 164, 173 (3d Cir.), *cert. denied,* — *U.S.* ——, 118 *S.Ct.* 336, 139 *L.Ed.*2d 261 (1997).

### III

We affirm the judgment of the Appellate Division and remand the matter to the Law Division for further proceedings consistent with the opinions of the Appellate Division and of this Court.

*For affirmance and remandment*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN, and COLEMAN—7.

*Opposed*—None.