734 A.2d 346

ROMAN CHECK CASHING INC., PLAINTIFF–APPELLANT,
v. NEW JERSEY DEPARTMENT OF BANKING AND
INSURANCE, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 11, 1999—Decided August 6, 1999.

60

Before Judges HAVEY, SKILLMAN and LESEMANN.

*Joseph J. Bell*, argued the cause for appellant (*Joseph J. Bell & Associates*, attorneys; *Mr. Bell*, on the brief).

*Thomas M. Hunt*, Deputy Attorney General, argued the cause for respondent Commissioner of Banking & Insurance (*John J. Farmer, Jr.*, Attorney General, attorney; *Joseph L. Yannotti*, Assistant Attorney General, of counsel; *Mr. Hunt*, on the brief).

The opinion of the court was delivered by

LESEMANN, J.S.C. (temporarily assigned).

Plaintiff Roman Check Cashing, Inc., (Roman) challenges the constitutionality of *N.J.S.A.* 17:15A–41e, which provides that no licensed check cashing office may be located within 2,500 feet of another such office. *N.J.S.A.* 17:15A–41e is part of the New Jersey Check Cashers Regulatory Act of 1993, *N.J.S.A.* 17:15A–30

to 52 (the Act). Because we are unable to perceive any rational connection between that limitation and any legitimate purpose underlying the statute, we conclude that the restriction is unconstitutional.

Roman is a New Jersey corporation located in the town of Dover. It applied to the New Jersey Department of Banking and Insurance (the Department) for a license as a check casher which, upon correction of some deficiencies, was considered "complete" on December 1, 1997. The proposed location for its check cashing office was in a Dover supermarket it owned known as the Latino American Supermarket. Dover has approximately 15,000 residents.

The Act represents a detailed set of regulations governing the check cashing business. It repealed a prior statute known as "The Check Cashing Law" which had been adopted in 1951 as *N.J.S.A.* 17:15A–1 *et seq.* It requires that one who engages in the check cashing business be licensed by the Department, *N.J.S.A.* 17:15A–33; limits fees that may be charged for check cashing services, *N.J.S.A.* 17:15A–43; requires reports to be filed annually with the Department, *N.J.S.A.* 17:15A–45; contains minimum net worth requirements for a check cashing business, *N.J.S.A.* 17:15A–37; and contains penalty provisions for violations of the Act; *N.J.S.A.* 17:15A–49. The provision at issue here states that,

no office or mobile office [for check cashing purposes] shall be located within 2,500 feet of an existing office or mobile office,....

[*N.J.S.A.* 17:15A–41e.]

Roman's application met all the conditions of the Act, but for the requirement that it be located 2,500 feet from any existing check cashing office. Its proposed business was located 1,004 feet from an existing licensed facility, the only such facility in Dover. For that reason, the Department rejected this application.

■ The applicable legal principles are clear. In determining whether the regulation violates Roman's substantive due process rights, the question is whether there is any rational relationship between the regulation and a legitimate State purpose. If so, and

if the regulation is not arbitrary, capricious or unreasonable, the regulation should be sustained:

> Economic regulations ... need be only rationally related to a legitimate state purpose to satisfy requirements of substantive due process. *Williamson v. Lee Optical of Okla.,* 348 *U.S.* 483, 488, 75 *S.Ct.* 461, 464, 99 *L.Ed.* 563, 572, *reh'g denied,* 349 *U.S.* 925, 75 *S.Ct.* 657, 99 *L.Ed.* 1256 (1955). If an economic regulation is not arbitrary, capricious, or unreasonable, and the means selected bear a rational relationship to the legislative objective, the regulation should be sustained.
>
> [*Brown v. City of Newark,* 113 *N.J.* 565, 572, 552 *A.2d* 125, (1989).]

On that basis, *e.g.,* in *Piscataway Township Bd. of Educ. v. Caffiero,* 86 *N.J.* 308, 318, 431 *A.2d* 799 (1981), the Court held that a statute imposing vicarious liability on parents for damage done to school property by their children did not violate due process standards and was constitutional:

> Due process requires "only that a law shall not be unreasonable, arbitrary or capricious, and that the means selected shall bear a rational relation to the legislative object sought to be obtained...." We do not sit as a body reviewing the wisdom of legislative decisions, whether new or old, but can determine only whether legislative action is within constitutional limitations. If the statute does not violate the Constitution but is merely unwise or based on bad policy, then, ..., it is for the Legislature rather than this Court to deliver a finishing blow to it.
>
> [Citations omitted.]

 The presumption of validity in favor of a statute is strong, and one challenging that validity has a heavy burden to bear:

> The presumption [of validity] is not an irrebuttable one, but it places a heavy burden on the party seeking to overturn the ordinance. Legislative bodies are presumed to act on the basis of adequate factual support and, absent a sufficient showing to the contrary, it will be assumed that their enactments rest upon some rational basis within their knowledge and experience. This presumption can be overcome only by proofs that preclude the possibility that there could have been any set of facts known to the legislative body or which could reasonably be assumed to have been known which would rationally support a conclusion that the enactment is in the public interest. The judiciary will not evaluate the weight of the evidence for and against the enactment nor review the wisdom of any determination of policy which the legislative body might have made.
>
> [*Hutton Park Gardens v. West Orange Town Council,* 68 *N.J.* 543, 565, 350 *A.2d* 1 (1975) (citations omitted).]

The State argues that there is a rational relationship between the 2,500 foot requirement and a legitimate State objective. The policy of the Act, it claims, includes prevention of illegal money

laundering through check cashing facilities and, to that end, the State has an interest in maintaining the economic soundness of check cashing facilities. Absent such soundness, it says, an "unscrupulous business-person may be tempted by profitable criminal activity, such as money laundering." To accomplish that end, the State has an interest in "preventing dangerous geographical saturation of the market," to avoid having those market forces "drive business-persons to desperate choices, including money laundering." It concludes that,

it is clearly conceivable that the distance requirement fosters healthy competition among check cashers, and that the Legislature was aware that healthy competition unlike completely unfettered economic rivalry serves many beneficent purposes, including lessening the attractions of criminal activity.

The State also claims that the distance requirement is an "even-handed approach" with the virtues of "ease of administration and equal treatment," and it further argues that comparable businesses, such as banks, money lenders and similar operations are all regulated as to their choice of location for operations. *See, e.g.,* as to banks, *N.J.S.A.* 17:9A–20 and as to credit unions, *N.J.S.A.* 17:12B–24.[1]

---

[1] At oral argument, we requested that the Department provide us with whatever information it had respecting the purpose of the distance limitation and concerning existing licensees. In response, the Department advised that upon initial introduction of the bill that became the Check Cashers Regulatory Act of 1993, the Department had opposed the restriction because it regarded the provision as one which would "permit monopolization of businesses, especially in city areas." Subsequently, the Governor's Counsel had advised the Governor that one of the Assembly sponsors of the bill supported the restriction as a method of "preventing market saturation." The Governor's Counsel also noted that he had been advised that "nine other States have enacted provisions of this kind."

The Department also advised that there are 284 licensed check-cashing facilities operating in the State, approximately one-half thereof predating the present statute (and thus not subject to the 2,500 foot limitation) and one-half having been licensed after the statute was adopted, and thus being subject to that limitation.

We did not find that the material submitted significantly influenced our decision on the validity of the challenged provision.

■ We have no disagreement with the principles cited by the State or the strong presumption it urges for the validity of any economic regulation. Our difficulty arises from the State's inability to point to any rational relationship between the legitimate ends it seeks to accomplish and the apparently arbitrary selection of a 2,500 foot distance limitation, applicable alike to the most sparsely populated rural area and the most densely populated urban area. Nor have our own attempts to perceive such a relationship been any more successful.[2]

Roman notes that its application is to open a check cashing office in a town of 15,000 persons which has one check cashing office. Thus, that office is available to serve 15,000 people. If Roman were also permitted to open in Dover, each facility would, on that same basis, have 7,500 potential customers.[3]

On the other hand, in a rural area, the 2,500 foot radius might well encompass far fewer than either 15,000 or 7,500 persons. And, conversely, in a densely populated urban area, the 2,500 foot limitation—almost one-half mile—might well encompass a population several times that of Dover. The effect of the limitation would thus vary widely depending on the area in question and the result would be grossly unequal and grossly unfair.

In addition, Roman argues that there is simply no basis to fix 2,500 feet as an appropriate limitation—rather than, say, 1,000 feet or 5,000 feet. And, as noted, the State offers no assistance in finding a rationale for the statutory treatment.

---

[2] In its brief, the State impliedly acknowledged its inability to spell out any such relationship and suggests that "the court should resort to its own reasoning to impute a rational relationship between the distance requirement and the State's legitimate interest in regulating check cashers."

[3] We realize, of course, that patrons of any business are not limited by municipal boundary lines, and these numbers are, to that extent, artificial approximations. However, we believe they nevertheless demonstrate the arbitrariness of the provision under attack here.

Nor is it clear how the distance requirement relates in any way to the economic health or stability of the check cashing business.[4] It is true, of course, that banks are required to show a need and a potential for viability before being permitted to open in a given location. *N.J.S.A.* 17:9A–20; *In re Orange Savings Bank,* 172 *N.J.Super.* 275, 286, 411 *A.2d* 1150, *appeal dismissed,* 84 *N.J.* 433, 420 *A.2d* 339 (1980)(proceeding on a bank branch application is judicial in nature and the burden is on the applicant to establish that the statutory requirements have been met.) However, that need and potential is not determined solely on the basis of an arbitrary geographical formula. It includes a consideration by the Department of all relevant considerations and a decision made with the best information the Department can bring to bear on the subject. That is simply not the case here.

Despite the presumption of validity, despite the fact that the State need show no more than some rational relationship between means and end, and despite this court's reluctance to invalidate economic regulatory legislation, when the court becomes convinced that there is no rational basis for the regulation, and it is indeed arbitrary, capricious and unreasonable, the conclusion must be that the regulation cannot stand. That is the case here. We find no rational relationship between the 2,500 foot distance require-ments and any declared or implied state policy, and thus our conclusion is that the statute is unconstitutional.[5] *See, e.g., State of New Jersey Dep't of Envtl. Protection and Energy v. Gloucester Envtl. Management Servs., Inc.,* 866 *F.Supp.* 826, 833–35 (D.N.J. 1994); *Roselle v. Wright,* 21 *N.J.* 400, 407–08, 122 *A.2d* 506 (1956);

---

[4] *See Township of Saddle Brook v. A.B. Family Center, Inc.,* 156 *N.J.* 587, 594–95, 722 *A.2d* 530 (1999), for a discussion of the constitutionality of artificially created geographic boundaries.

[5] Plaintiff also asserts that the statute violates the equal protection clause of both the United States Constitution, *N.J. Const.* amend. XIV § 1, and the New Jersey Constitution, *N.J. Const.* art. I, ¶ 2. In view of our determination that the statute is invalid on substantive due process grounds, however, there is no reason for us to address the equal protection argument.

*Katobimar Realty Comp. v. Webster,* 20 *N.J.* 114, 123, 118 *A.*2d 824 (1955). Accordingly, the statutory section under attack, *N.J.S.A.* 17:15A–41e, is declared invalid and the matter is remanded to the Department for further proceedings consistent with this opinion.