966 A.2d 14 (2009)
405 N.J. Super. 521
TOWNSHIP OF CINNAMINSON and Edward M. Schaefer, Construction Official for the Township of Cinnaminson, Plaintiffs-Respondents,
v.
Robert BERTINO and Deana Bertino and FHG, Inc., t/a Fantasy Gifts,[1] and Rheta F. Cheskin and Bruce S. Cheskin, Trustee, Defendants-Appellants.
No. A-2074-07T1
Superior Court of New Jersey, Appellate Division.
Argued October 7, 2008.
Decided March 9, 2009.
*15 Dennis E. Block, Turnersville, argued the cause for appellants.
John C. Gillespie, Marlton, argued the cause for respondents (Parker McCay, attorneys; Mr. Gillespie, of counsel and on the brief; Elena B. Zuares, on the brief).
Before Judges WINKELSTEIN, FUENTES and CHAMBERS.
The opinion of the court was delivered by
*16 FUENTES, J.A.D.
The central issue in this appeal concerns the constitutionality of a zoning ordinance adopted by the Township of Cinnaminson that restricts the location where commercial establishments that sell adult videos and novelty items can operate. The trial court rejected defendants' constitutional challenge, finding that the ordinance constituted a reasonable time, place, and manner restriction, was content neutral, and served a substantial governmental interest while allowing reasonable alternative avenues of communication.
We reverse. We hold that the trial court misapplied the holding in Hamilton Amusement Center v. Verniero, 156 N.J. 254, 716 A.2d 1137 (1998), when it relied on a generalized notion of "common sense" to find that the ordinance served a substantial governmental interest. Although evidence of a substantial governmental interest need not be based on empirical studies, such evidence must nevertheless provide a rational, objective basis from which to ascertain the existence of a substantial governmental interest underpinning the legislation.
We also hold that under Township of Saddle Brook v. A.B. Family Center, 156 N.J. 587, 722 A.2d 530 (1999), the Township of Cinnaminson has the burden of showing the availability of alternative suitable sites where the restricted business may operate. Here, in determining that the ordinance allowed reasonable alternative avenues of communication, the trial court failed to consider the impact the municipal restrictions have on defendants' ability to operate the business, in the context of the restrictions imposed by N.J.S.A. 2C:34-7(a).

I
Defendants Robert and Deana Bertino and FHG, Inc. own and operate three retail stores in New Jersey that sell merchandise they describe as "risqué," consisting mostly of adult novelty items such as lingerie, greeting cards, games, and videos, intended for "offsite use." According to Robert Bertino, the store premises do not contain video booths or peep shows. Although they sell "howto manuals" containing explicit sexual content in the form of advice or suggestions on how couples can enhance their intimacy, they do not sell adult magazines such as Hustler or Playboy.
On April 10, 2007, Robert Bertino contacted John Marshall, the Zoning Officer for the Township of Cinnaminson, expressing his interest in opening such a novelty store in the Township. In response to Marshall's request for a "written narrative," Bertino wrote a letter to Marshall that same day specifically identifying the location of the proposed store. The letter also included a schematic layout of the premises, and described the nature of the merchandise offered for sale.[2]
The store, to be called "Fantasy Gifts," would be part of the Pep Boys Plaza, a strip mall located in an area designated by the Township as a Building Development (BD) Redevelopment Zone. The BD Zone is less than one square mile in scope, and within 1000 feet of a residential neighborhood, a recreational park, and a church. The mall accommodates a variety of small retail businesses including a *17 dental office, a Subway sandwich shop, a bakery, a nail salon, a dry cleaners, and a thrift store called "Dollar Emporium."
After reviewing the letter, Marshall informed Bertino that the store would not comply with the applicable municipal zoning ordinance. Approximately forty-five days later, in late May or early June 2007, Marshall left a message on Bertino's answering machine stating that the store's location was likely improper under the local zoning ordinance and directed him to get an interpretation of the ordinance from the Zoning Board of Adjustment. Bertino denies receiving these calls from Marshall.
According to Marshall's deposition testimony, on Friday June 29, 2007, he received a complaint from a representative of the dental business operating in the mall, that Bertino was moving forward with the proposed adult novelty store. Marshall decided to investigate the complaint by visiting the site. Upon arriving at the scene, Marshall saw Mr. and Mrs. Bertino and their two small children inside the proposed store. When Marshall walked inside, he saw that "a number of items had been hung up on the walls, and there had been construction." This caused Marshall to emphasize again that no activities should take place to prepare for the opening of the store without first obtaining the required approvals from the municipal Zoning Board of Adjustment. Marshall's admonition went unheeded.
On July 18, 2007, defendants began operating the store under the name "Fantasy Gifts." According to the Township's records, when the store opened for business the Bertinos did not have: (1) site plan approval or a zoning permit; (2) the required construction permits under the Uniform Construction Code; and (3) the sprinkler system required under the Uniform Fire Code. In response, the Township filed an Order to Show Cause and obtained temporary injunctive relief shutting down defendants' business operations. That same day, Bertino filed an application for a zoning permit with Marshall's office.
On July 27, 2007, Marshall denied defendants' application for a zoning permit because the proposed use was not permitted under § 411-8C(1) of the Township Code which prohibited "adult entertainment (bookstores, video stores, theaters, exotic dancing)" in the BD redevelopment zone. On July 30, 2007, defendants filed an Answer to the Township's Verified Complaint and counterclaim challenging the constitutionality of the ordinances relied upon by the Township. Defendants also moved to vacate the temporary restraints previously granted by the court.
On August 1, 2007, two days after the parties' joinder of issue, the Township introduced an amendment to § 411-8C(1) of the Township Code. Two weeks later, the municipal governing body adopted the amendment on final reading. The amendment prohibits the following uses within the BD zone:
Adult entertainment (book stores, video stores, adult novelty stores, theaters, exotic dancing). Within this subparagraph, the following terms shall have the following meaning:
Adult book store, adult novelty store, or adult video store, means a commercial establishment which has as a significant or substantial portion of its stock-in-trade, or derives a significant or substantial portion of its revenues or devotes a significant or substantial portion of its interior business or advertising or maintains a substantial section of its sales or display space for the sale or rental for any form of consideration, of any one or more of the following:
(1) books, magazines, periodicals or other printed matter, or photographs, films, motion pictures, video cassettes, compact *18 discs, slides, DVDs or other visual representations which are characterized by their emphasis of the exhibition or display of "specified sexual activities" or "specified anatomical areas", as those terms are defined at N.J.S.A. 2C:34-6;
(2) instruments, devises [sic] or paraphernalia which are designed for use or marketed primarily for stimulation of human general [sic] organs or for pseudo masochism use or abuse of the user or others....
On August 15, 2007, the municipal governing body adopted the amendment to § 411-8C(1) of the Township Code on final reading.
The court denied defendants' motion to vacate the restraints, and remanded the matter for the Township's Zoning Board of Adjustment to conduct a hearing on defendants' appeal of the zoning officer's decision. The court retained jurisdiction pending the outcome of the proceedings before the Board.
In furtherance of the court's order, the Board scheduled a hearing for September 5, 2007. Due to defendants' failure to notify all affected property owners located within 200 feet of the proposed use, the September 5, 2007 hearing was adjourned to permit defendants an opportunity to cure the deficiency. The matter finally came before the Board of Adjustment on October 5, 2007.
Marshall was the only witness to testify before the Board of Adjustment on the question of whether the proposed Fantasy Gifts store met the ordinance's definition of an "Adult Novelty Store." He described the specific types of merchandise available at the store and advertised on its website. According to Marshall, "[s]eventy-five percent of the square footage" of the store was "dedicated to ... `sexually oriented business.'" Display racks and shelves contain "adult theme type videos," which, in his opinion, would not "be available at Blockbuster or Hollywood Video or any of the normal video stores." (Emphasis added.) Although he had not seen any of the videos, he opined that he had "seen enough video jackets to know what they were."
Marshall also described the various adult oriented novelty items available, including "plastic and rubber battery and non-battery operated devices." In his view, these things were not part of the inventory associated with stores like Woolco or Target.
Against this evidence, Marshall found the store to be an "adult novelty type place." He thus denied defendants' application for a permit because the store constituted "adult entertainment" as that term is defined in § 411-8C(1) of the Township Code. Marshall made the decision to deny the application based solely on § 411-8C(1) as it existed prior to the effective date of the amendment. In his view, however, the adoption of the amendment only reaffirmed that he had made the correct decision. The Board of Adjustment unanimously affirmed Marshall's July 27, 2007 decision.

II
After the Board's decision, the case returned to the Law Division by way of the parties' cross-motions for summary judgment. The Township argued the ordinance advanced a legitimate governmental purpose by preserving the integrity and character of the redevelopment zone. The Township did not present any evidence, however, to substantiate its position that the proposed store would have negative secondary effects on the surrounding community.
After considering the arguments of counsel, the court granted the Township's *19 motion. As explained in its memorandum of opinion, the trial court found that § 411-8C(1) was a valid time, place, and manner regulation because it did not "prohibit sexually oriented businesses from all zones within the Township, nor [did] it prohibit them from all BD zones." Rather, the ordinance was narrowly tailored to apply only to the BD zone in the Redevelopment Area.
The court also found that the municipal legislation was not adopted in response to the content of the items sold in the store, but was directed at the secondary negative effects caused by the store on the surrounding community. According to the motion judge, the Township did not need to substantiate its position in this regard with academic studies or other forms of empirical data because the negative secondary effects here were, in the judge's opinion, obvious.
The court also concluded that the ordinance served a substantial governmental purpose. Although the Township did not offer what the motion judge characterized as "concrete evidence" in support of the restrictions imposed by the ordinance, relying on common sense, the court found that "an adult novelty store with the types of products described in defendants' own words [would] have an impact on the morals, maintenance of property values and character of the surrounding neighborhood which includes a residential area, a church and a recreational park for persons of all ages." In the view of the trial court, in adopting § 411-8C(1), the municipality reaffirmed the purpose of the redevelopment plan to "promote the health, safety, general welfare, morals, order, efficiency, economy and the maintenance of property value and character of the Township."
The final part of the trial court's analysis concerned the interplay between Township code § 411-8C(1) and N.J.S.A. 2C:34-7. This statute prohibits the operation of a "sexually oriented business" in areas
within 1000 feet of any existing sexually oriented business, or any church, synagogue, temple or other place of public worship, or any elementary or secondary school or any school bus stop, or any municipal or county playground or place of public resort and recreation, or any hospital or any child care center, or within 1000 feet of any area zoned for residential use.
[N.J.S.A. 2C:34-7(a).]
After considering the combined effect the municipal and statutory restrictions would have on defendants' ability to operate an adult novelty store within the Township, the trial court concluded that the alternative areas available had been drastically reduced. Indeed, the court found that "[t]he statute could exclude 6 of the 7 BD Zones." Despite this finding, the court held that "[i]t is ... of no real concern ... whether any portion of the remaining BD Zone would be available to defendants."

III
Defendants argue that the trial court erred when it upheld the validity of § 411-8C(1) despite the Township's failure to present evidence to substantiate its claim that the store's operation had a secondary negative effect on the surrounding community. According to defendants, the Township must prove such a claim through competent evidence establishing a link between defendants' business activities and any alleged deleterious effect to the surrounding community.
Because the trial court addressed this question in the context of deciding plaintiff's motion for summary judgment, we will first articulate the relevant standard of review. A motion for summary judgment *20 shall be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). A reviewing court must determine whether
the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.... If there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a "genuine" issue of material fact for purposes of Rule 4:46-2.
[Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995).]
On appeal, we use the same standards employed by the trial court to conduct our own de novo review. Mango v. Pierce-Coombs, 370 N.J.Super. 239, 249, 851 A.2d 62 (App.Div.2004). Against this backdrop, we will now address the issues before us.
We start our analysis by first describing the criteria for assessing the constitutionality of legislation seeking to regulate speech. Laws "enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment." City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 46-47, 106 S.Ct. 925, 928, 89 L.Ed.2d 29, 37 (1986).[3] On the other hand, a statute regulating the time, place, or manner of protected speech is permissible so long as the statute: 1) does not restrain speech on the basis of its content; 2) serves a substantial governmental interest; and 3) does not unreasonably limit alternative avenues of communication. Id. at 47, 106 S.Ct. 925.
We must look to the purpose behind the regulation in order to determine whether a given piece of legislation is content-based or content-neutral. Cooper v. Dillon, 403 F.3d 1208, 1215 (11th Cir.2005). Content-neutral time, place, and manner regulations are constitutionally acceptable if they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication. By contrast, content-based restrictions are subject to a strict scrutiny analysis, and must be narrowly tailored to promote a compelling governmental interest. United States v. Playboy Entm't Group, Inc., 529 U.S. 803, 813, 120 S.Ct. 1878, 1886, 146 L.Ed.2d 865, 879 (2000).
In Renton, supra, the Supreme Court found a zoning ordinance that regulated the location of "businesses that purvey sexually explicit materials [was] ... designed to combat the undesirable secondary effects of such businesses...." 475 U.S. at 49, 106 S.Ct. at 929-30, 89 L.Ed.2d at 38-39. The ordinance was thus reviewed "under the standards applicable to 'content-neutral' time, place, and manner regulations." Ibid. This conclusion is predicated upon the recognition that "society's interest in protecting [sexually explicit] expression is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate." Young v. Am. Mini Theatres, Inc., 427 U.S. 50, 70, 96 S.Ct. 2440, 2452, 49 L.Ed.2d 310, 326 (1976).
*21 Here, we agree with the trial court that § 411-8C(1) is a content-neutral, time, place, manner regulation of speech. On the record before us, however, we cannot ascertain whether this regulation leaves alternative avenues of communication available. We also conclude that the trial court erred in relying exclusively on common sense to determine that the ordinance serves a substantial governmental interest. We will now address each of these elements.
On the question of content neutrality, the Supreme Court in Renton, supra, noted that an ordinance restricting the location of adult movie theaters did not appear to fit clearly into content-neutral or content-based categories. 475 U.S. at 47, 106 S.Ct. at 929, 89 L.Ed.2d at 37. Despite this ambivalence, the Court ultimately came down in favor of neutrality because the regulation was not aimed at the content of the films shown at the theaters, but rather at the secondary effects the theaters would have on the surrounding community. Ibid. The Court emphasized that the ordinance did not ban all adult theaters, but merely prohibited these theaters from operating within 1000 feet of residential zones and other specified areas. Id. at 57, 106 S.Ct. 925.
Applying this reasoning here, we are satisfied that § 411-8C(1) is likewise a content-neutral, time, place, and manner regulation. In fact, the regulatory scope of § 411-8C(1) goes beyond the regulation of businesses with a pronounced "adult" theme. § 411-8C(1) also regulates the location where bars, bowling alleys, cocktail lounges, dance clubs, employment offices, kennels, laundromats, pawn shops, and pet stores can operate within the Township.
We next consider whether § 411-8C(1) serves a substantial governmental interest. Subsumed within this question is the determination of whether the operation of the business has secondary negative effects on the community. In Hamilton Amusement Center v. Verniero, supra, 156 N.J. at 270, 716 A.2d 1137, our Supreme Court considered the substantial governmental interest question in the process of determining, and ultimately upholding the constitutionality of N.J.S.A. 2C:34-7.
The Hamilton Court emphasized that, although not a "heavy" one, the State bears the burden of proving the existence of a substantial governmental interest justifying the regulation. Id. at 269-70, 716 A.2d 1137. After "collectively" reviewing the available precedents from this and other jurisdictions, the Court noted the emergence of a "national consensus regarding the secondary effects of sexually oriented businesses." Id. at 270, 716 A.2d 1137. The Court then gave the following description of that "consensus."
The [United States] Supreme Court has recognized that sexually oriented businesses can cause concrete and non-speculative side effects that government can target. These effects include promoting juvenile delinquency, contributing to an overall increase in crime, creating an environment that leads to the general deterioration of neighborhoods, and lowering property values.
Additionally, this Court has held that a zoning ordinance need not articulate its objectives but may be sustained against constitutional challenge on the presentation in court of evidence supporting the governmental interest advanced by the ordinance. Thus, the substantial governmental interest prong can be satisfied by reference to studies pertaining to other jurisdictions, legislative history, consensus, and even common sense. (Emphasis added.)
[Id. at 271, 716 A.2d 1137 (internal citation omitted).]
*22 Here, the trial court seized upon this reference to "common sense" to wholly justify the restrictions imposed by the Township. Although common sense should always be a benchmark of sound judicial reasoning, it cannot be invoked as a substitute for analysis.
Given the facts presented here, we are satisfied that a generalized invocation of "common sense" is not sufficient to meet the burden of establishing that the ordinance promotes a substantial governmental interest. Despite the Court's statement in Hamilton that "sexually oriented businesses can cause concrete and nonspeculative side effects that government can target," Ibid., not all businesses with an adult theme necessarily fall within this broad characterization.
There may be significant differences between movie theaters exclusively showing films with a strong sexual content (as was the case in Renton), an adult book store (as was the case in Hamilton), and a novelty store selling items such as lingerie, fur-lined handcuffs, anatomically correct items, anal toys, vibrators, kits for couples, novelties and gag gifts for bridal and bachelorette parties. Although all three businesses are intended to cater to an adult clientele, it can be argued that the consumers targeted by defendants here are unlikely to share many of the characteristics of those who are likely to patronize the other two businesses.
Accepting this as a plausible premise, the adverse secondary effects referred to by the Court in Hamilton, (juvenile delinquency, increase in crime, creation of an environment that leads to the deterioration of neighborhoods), will vary, depending upon the particular business activity engaged in by the sexually oriented business. A broad brush approach in which all adult businesses are tainted with the same social ills carries an unacceptable risk of substituting stereotypic notions of human behavior for sound reasoning.
What then is required for the Township to meet its burden of showing that the ordinance serves a substantial governmental interest? As noted in Renton and Hamilton, the Township can meet the substantial governmental interest burden in a variety of ways. Anecdotal evidence in the form of testimony from realtors attesting to the detrimental effect these establishments have had on surrounding property values may provide a rational basis to sustain the legislation. Information gathered by chambers of commerce or other civic associations may also provide valuable insight into the potential deleterious effect these businesses have on similar communities. Accounts by law enforcement personnel, based on their experience and training, may provide a rational link between a rise in antisocial behavior such as juvenile delinquency or other more serious quality of life offenses, and the operation of these businesses.
In short, as the Court made clear in Hamilton, such data need not be formally compiled in a statistically valid study, or based on empirical evidence gathered by professionally trained individuals. The evidence must nevertheless provide a rational, objective basis from which a reviewing court can ascertain the existence of a substantial governmental interest underpinning the legislation. Because these businesses and activities tend to be viewed by the public with disdain and apprehension, a reviewing court must be vigilant to guard against the use of the power to zone that serves only to pander to mere prejudice.
The final step in the analysis concerns the availability of alternative avenues of expression. Legislation restricting constitutionally protected speech must *23 leave available alternative avenues of communication. Renton, supra, 475 U.S. at 47, 106 S.Ct. at 928, 89 L.Ed.2d at 37. Here, in addressing the municipal restrictions in § 411-8C(1), the trial court was also required to consider the statutory restrictions imposed by N.J.S.A. 2C:34-7. Based on the certifications presented by the parties, the trial court found that the alternative sites available to defendants had been "drastically reduced" by the combined effect of the municipal and statutory restrictions. Despite noting this concern, the trial court concluded that the ordinance left defendants with sufficient alternative avenues of expression, without explaining or identifying these alleged alternatives. In our view, the court erred in reaching this conclusion without the benefit of a plenary hearing.
In Township of Saddle Brook v. A.B. Family Center, supra, 156 N.J. at 589, 722 A.2d 530, the Court considered the validity of municipal legislation that effectively barred the operation of adult book stores in the Township of Saddle Brook. In affirming our decision in Township of Saddle Brook v. A.B. Family Center, 307 N.J.Super. 16, 704 A.2d 81 (App.Div.1998), aff'd, 156 N.J. 587, 722 A.2d 530 (1999), to remand the matter to the Law Division for further proceedings, the Court imposed upon the municipality the burden of showing the availability of alternative sites. Saddle Brook, supra, 156 N.J. at 597, 722 A.2d 530. As the following passage from Saddle Brook illustrates, the trial court may be required to conduct a plenary hearing to enable the municipality to meet this burden of proof.
The Law Division will be required preliminarily to determine the market area relevant to the [the store] site in order to ascertain the adequacy of alternative available sites. We anticipate that the parties will offer expert testimony on that issue to assist the Law Division in its determination. As the Appellate Division opinion suggests, the relevant market area should include areas located in other municipalities "within reasonable proximity to the Saddle Brook location." We infer that the trial court's determination of reasonable proximity may be informed by evidence of regional marketing patterns, availability of public transportation and access by automobiles, geographical distribution of customers at comparable sexually oriented businesses, and other factors deemed relevant by the parties and the court. The trial court's ascertainment of the availability of alternative sites necessarily will depend in part on the provisions of zoning ordinances enacted by neighboring municipalities that permit, prohibit, restrict or affect the feasibility of establishing sexually oriented businesses. After determining the relevant market and the relative availability of sites within that market, the Law Division must then determine whether the extent of the availability of alternative channels of communication, in relation to the size of the relevant market, is adequate to sustain the constitutionality of N.J.S.A. 2C:43-7 as applied to the [store] site.
Finally, we concur with the Appellate Division's conclusion that the Township should bear the burden of proving the adequacy of available alternative avenues of communication within the relevant marketing area.
[Ibid.]
Here, the trial court must consider the interplay between the restrictions imposed by § 411-8C(1) and N.J.S.A. 43-7(a) to determine what alternative suitable sites are left open to defendants. The Township bears the burden of showing the availability of these sites within the relevant *24 market area, which may include municipalities located within reasonable proximity of its own borders. As the Court noted, the availability of these neighboring municipalities will depend upon the legal restrictions, if any, imposed by those jurisdictions on adult novelty stores.
Thus, the first step under Saddle Brook will be the determination of the relevant market area. Second, the trial court must determine the availability of suitable sites within that market area. With these two findings in mind, the court must then determine whether the number of suitable sites in relation to the size of the market area, provides defendants with enough alternatives to withstand constitutional scrutiny. Stated differently, five suitable sites within a ten-mile market area may be enough to satisfy constitutional concerns. The same number of suitable sites within a fifty-mile market area may not be. Ultimately, what will be constitutionally sufficient will depend upon an exquisite exercise of judicial authority, guided by the fundamental principles embodied in the First Amendment.
Reversed and remanded.
NOTES
[1] Improperly pleaded as Fantasy House, Inc.
[2] Bertino attached to the letter an inventory list describing the items that would be offered for sale. The inventory included the following items: ladies' underwear, lingerie, leather lingerie, small restraints, fur-lined handcuffs, anatomically correct items, anal toys, vibrators, kits for couples, novelties and gag gifts, bridal gifts and bachelorette novelties, bridal lingerie, DVDs, bachelorette party favors, lotions, massage oils and lubricants.
[3] Although defendants are not challenging this municipal legislation on State Constitutional grounds, we note that our Supreme Court has interpreted the free speech clause in Article I, Paragraph 6 of our State Constitution ordinarily "to be no more restrictive than the federal free speech clause." Hamilton, supra, 156 N.J. at 264, 716 A.2d 1137 (citing Shelton Coll. v. State Bd. of Educ., 48 N.J. 501, 518, 226 A.2d 612 (1967)).