> **NOT FOR PUBLICATION WITHOUT THE**
> **APPROVAL OF THE APPELLATE DIVISION**
>
> This opinion shall not "constitute precedent or be binding upon any court."
> Although it is posted on the internet, this opinion is binding only on the
> parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0491-15T4

ANA COLON,

      Plaintiff-Appellant,

v.

TOYS "R" US-DELAWARE, INC.,
improperly pled as TOYS R US,

      Defendant-Respondent.

_____

Argued November 15, 2016 — Decided March 29, 2017

Before Judges Suter and Guadagno.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-0952-14.

Robert A. Conforti argued the cause for appellant (Rinaldo Law Offices, attorneys; Mr. Conforti, of counsel; Richard P. Rinaldo, on the briefs; Jeff Thakker, of counsel and on the briefs).

Seth Malkin argued the cause for respondent (Levin & Malkin, attorneys; Mr. Malkin, on the brief).

PER CURIAM

Plaintiff Ana Colon appeals from a Law Division order granting summary judgment in favor of defendant Toys "R" Us-Delaware, Inc. and dismissing her complaint with prejudice. We affirm.

On April 20, 2012, plaintiff was shopping in one of defendant's stores with her nine-year-old nephew. After selecting a toy for the child, plaintiff entered the check-out lane. Plaintiff briefly left the lane to get an ice cream for her nephew from a nearby self-service refrigerator. As she was returning to the lane, plaintiff slipped and fell.

Assistant store manager Yorel Simmons saw plaintiff fall and helped her up. After cleaning the floor area where plaintiff fell, Simmons rang up her purchase. Simmons then prepared an incident report regarding the accident. Plaintiff stated that she "fell on the floor, because something on the floor was wet[] or someone spit on the floor." Simmons stated that plaintiff "slipped on the floor" and noted that there was liquid on the floor from a previous customer. Simmons had inspected the area about five minutes earlier and observed that the spilled liquid did not come from an item sold in the store. Simmons noted that a "previous guest had some liquid in a bottle that spilled after she left."

Plaintiff did not seek immediate medical attention and did not see a doctor until after she consulted with counsel who referred her to one in July or August 2012.

Plaintiff filed this action asserting a negligence claim, alleging defendant failed to exercise proper care and caused a dangerous and hazardous condition to exist which was the proximate cause of plaintiff's injury.

In a sworn statement, Simmons said he observed "a customer with a small child who had a cup with liquid inside" which "might have spilled on the ground." Simmons maintained that when he inspected the area "a couple of minutes prior to the accident," he "did not see any liquid on the ground." After plaintiff's fall, Simmons noticed a "small puddle" approximately six inches in length, which he described as "clear," but otherwise was "not sure what it was."

Plaintiff testified at a deposition that she thought she slipped on bubble-blowing liquid, because it was "shiny" and "seemed like little bubbles." Defendant sold bottles of bubble-blowing liquid in the store at the time of plaintiff's accident. However, plaintiff did not see any open bottles or containers on the floor where she fell, and admitted that she did not know how the liquid got on the floor or how long it had been there.

A-0491-15T4

Simmons testified that a child waiting in line in front of plaintiff was holding juice in a "pouch." Simmons acknowledged that this was inconsistent with the observation he made in his incident report and subsequent statement, but he believed that the child was holding a pouch and not a cup or a bottle. Simmons did not know where the liquid came from but believed the child in the carriage in front of plaintiff spilled juice, although he did not witness the child, or anyone else, spill any liquid.

Defendant moved for summary judgment, arguing that plaintiff did not establish a negligence claim because she failed to prove that defendant had notice of the spilled liquid before plaintiff slipped on it. Plaintiff opposed the motion, arguing that Simmons' statement that "[t]he previous guest had some liquid in a bottle that spilled" was sufficient evidence for a rational jury to find that Simmons was on notice that another customer had spilled the liquid, and thus, his failure to warn plaintiff of the spill was negligent.

Plaintiff also argued the mode-of-operation rule should apply to raise an inference of negligence because defendant's store had a "refreshment area" from which customers retrieved ice cream and soft drinks to consume around the store, creating slip and fall hazards like the one plaintiff was injured by.

A-0491-15T4

On August 20, 2015, Judge Kenneth J. Grispin granted defendant's motion for summary judgment, agreeing that plaintiff did not establish the notice element.  The court was not persuaded that a rational factfinder could infer from Simmons report alone that Simmons had notice of the spill before plaintiff slipped on it.  Furthermore, the judge declined to apply the mode-of-operation rule because plaintiff failed to

> show a nexus between the method or manner in which [d]efendant's business is operated when extending products to the public and the harm alleged to have caused her injury.  There has been no testimony that the substance she slipped on was the result of a spilled drink, ice cream, or water. Further, there has been no evidence showing that [d]efendant's store was prone to having spillage of this type, or that the area in question was ill-kept.

On appeal, plaintiff maintains that because defendant's store allows self-service of "soda, water, ice cream and bubble-blowing products throughout the premises" the proprietor is on constructive notice of slip-and-fall hazards at its premises. Alternatively, plaintiff maintains that "even without the mode of operation rule, there was a genuine issue of fact as to the defendant's actual/constructive knowledge of the spill, and it was for the jury to decide whether the defendant discharged its duty to Ms. Colon."

Our review of a ruling on summary judgment is de novo and we apply the same legal standard as the trial court. Coyne v. N.J. Dep't of Transp., 182 N.J. 481, 491 (2005); Twp. of Cinnaminson v. Bertino, 405 N.J. Super. 521, 531 (App. Div.), certif. denied, 199 N.J. 516 (2009).

Business owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation. Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 433 (1993). The duty of due care requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe. O'Shea v. K. Mart Corp., 304 N.J. Super. 489, 492-93 (App. Div. 1997). Generally, a proprietor "is not liable for injuries caused by defects of which he had no actual or implied knowledge or notice, and no reasonable opportunity to discover." Brown v. Racquet Club of Bricktown, 95 N.J. 280, 291 (1984).

"[I]n circumstances in which, as a matter of probability, a dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents," the mode-of-operation rule may accord the plaintiff "an inference of negligence, imposing on the defendant the obligation to come

forward with rebutting proof that it had taken prudent and reasonable steps to avoid the potential hazard." Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563-64 (2003).

Recently, the Court reaffirmed four principles guiding the application of the mode-of-operation doctrine:

> First, the mode-of-operation doctrine has never been expanded beyond the self-service setting, in which customers independently handle merchandise without the assistance of employees or may come into direct contact with product displays, shelving, packaging, and other aspects of the facility that may present a risk . . . .
>
> Second, the rule applies only to accidents occurring in areas affected by the business's self-service operations, which may extend beyond the produce aisle of supermarkets and other facilities traditionally associated with self-service activities . . . .
>
> Third, the . . . rule is not limited to cases in which customer negligence created the dangerous condition; it also applies to self-service settings in which the injury may have resulted from the manner in which employees handled the business's products or equipment, or the inherent qualities of the merchandise itself . . . .
>
> Fourth, if the . . . rule applies, it affects the parties' burdens of proof in two respects. The rule relieves the plaintiff of the burden of proving actual or constructive notice of the dangerous condition. . . . [and] gives rise "to an inference of negligence, shifting the burden of production to the defendant, who may avoid liability if it shows that it did 'all that a reasonably prudent man would do

> in the light of the risk of injury [the] operation entailed.'"
>
> [Prioleau v. Ky. Fried Chicken, Inc., 223 N.J. 245, 262-263 (2015).]

Applying these principles, we are satisfied that plaintiff has failed to establish any nexus between the liquid she alleges caused her fall and defendant's self-service facility. Neither of the two theories presented as to the source of the liquid had any connection to defendant's self-serve area.

Yorel Simmons testified there were two self-serve coolers near the store's check-out area, one for soda, the other for ice cream. The soda cooler contained twenty-ounce plastic bottles, while the ice cream cooler contained popsicles, ice cream sandwiches, cups, and cones. At the time of plaintiff's accident, Simmons was at a check-out counter waiting on a customer who was immediately in front of plaintiff. The customer had a three-year-old sitting in her cart holding a juice container which Simmons described as "like a pouch, like a Capri Sun pouch" and noted Toys "R" Us did not sell the product.

Plaintiff testified that she believed she slipped on "bubbles" and speculated that someone opened a bubble container, which were sold at the store, and "maybe they dropped it."

Neither the juice pouch described by Simmons nor the bubble container suspected by plaintiff had any demonstrable nexus to

the self-service soda and ice cream coolers maintained at defendant's store.

Plaintiff relies on <u>Bozza v. Vornado, Inc.</u>, 42 <u>N.J.</u> 355 (1964), and <u>Ryder v. Ocean County Mall</u>, 340 <u>N.J. Super.</u> 504 (App. Div.), <u>certif. denied</u>, 170 <u>N.J.</u> 88 (2001), in support of her argument that she should not have to identify the source of the spilled liquid.  Her reliance on both cases is misplaced.

In <u>Bozza</u>, <u>supra</u>, the defendants operated a very busy self-service restaurant within a retail store where patrons were permitted to purchase, carry around, and consume food freely throughout the premises, so much so that the area was littered with "drippings, paper straw holders, napkins and dirt on the floor." 42 <u>N.J.</u> at 358.  Although the plaintiff could not discern what "sticky," "slimy," "chocolate colored substance" she slipped on, the Court nevertheless applied the mode-of-operation rule because "the nature of defendants' business and the general condition of defendants' premises would permit a jury to infer negligence on the part of the defendants." <u>Id.</u> at 358, 361.

In contrast, defendant's checkout area contained only two self-service coolers with no seating and was not a "self-service cafeteria" as in <u>Bozza</u>, where customers could purchase "sodas, hot dogs, hamburgers, French fried potatoes and the like" to be

"consumed at the counter or carried, with or without trays, to nearby tables." Id. at 358.

In Ryder, supra, a patron slipped on a drink spilled in the common area of a mall. 340 N.J. Super. at 507-08. We found the mode-of-operation rule applicable because the mall permitted patrons to consume food with such frequency that the court considered it "the functional equivalent of a cafeteria." Id. at 509. Mall personnel would get reports of one or more spills every day with more on weekends and holidays. Ibid.

The use of the mall's common areas to consume food and beverages in Ryder is distinguishable from the limited items available at defendant's checkout area. Although patrons were permitted to consume food items and beverages on defendant's premises, there was no showing that patrons treated defendant's checkout area as a "functional equivalent of a cafeteria." Ibid.

Plaintiff has failed to demonstrate a reasonable nexus between the limited self-service items offered at defendant's store and the dangerous condition allegedly producing her injury.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0491-15T4